# VINCENT J. TARULLO *v.* INLAND WETLANDS AND WATERCOURSES COMMISSION OF THE TOWN OF WOLCOTT ET AL.
## (SC 16797)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued December 13, 2002—officially released May 20, 2003

*J. Brendan Sharkey,* for the appellant (plaintiff).

*Michael G. Tansley,* with whom, on the brief, was *Pamela A. McLemore,* for the appellee (named defendant).

*Franklin G. Pilicy,* for the appellee (defendant Chestnut Wolcott, LLC).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Vincent J. Tarullo, appeals from the judgment of the trial court dismissing his appeal from the granting of a wetlands and watercourses permit in connection with a proposed residential subdivision in the town of Wolcott. He contends that the trial court improperly affirmed the decision of the named defendant, the inland wetlands and watercourses commission of the town of Wolcott (commission), because: (1) the commission failed properly to consider alternatives that would cause less or no environmental impact to the wetlands and watercourses, as required by General Statutes § 22a-41 (a) (2);[1] and

---

[1] General Statutes § 22a-41 provides: "(a) In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commis-

(2) the commission's finding that there were no feasible and prudent alternatives to the proposed wetlands and

sioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed regulated activity on wetlands or watercourses;

"(2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;

"(3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;

"(4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and

"(6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses.

"(b) (1) In the case of an application which received a public hearing pursuant to (A) subsection (k) of section 22a-39, or (B) a finding by the inland wetlands agency that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record in writing.

"(2) In the case of an application which is denied on the basis of a finding that there may be feasible and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency, as the case may be, shall propose on the record in writing the types of alternatives which the applicant may investigate provided this subdivision shall not be construed to shift the burden from the applicant to prove that he is entitled to the permit or to present alternatives to the proposed regulated activity."

watercourses activity was not supported by substantial evidence in the record. We affirm the judgment of the trial court.

The defendant Chestnut Wolcott, LLC (developer), applied to the commission for a wetlands and watercourses permit in conjunction with a residential subdivision that it proposed for certain property located south of Spindle Hill Road in Wolcott (site). The site consists of approximately eighty-one acres of land adjacent to Chestnut Hill Reservoir (lake).[2] The proposed development of the site requires some activity in the wetlands and watercourses on the site. The plaintiff owns real property that abuts the site. He intervened in the proceedings before the commission pursuant to General Statutes § 22a-19[3] and later appealed from the commission's issuance of the wetlands and watercourses permit to the Superior Court pursuant to General Statutes § 22a-34 (a).[4] After the trial court dismissed his appeal,

---

[2] Although called a reservoir, the lake does not supply water to the public.

[3] General Statutes § 22a-19 provides: "(a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[4] General Statutes § 22a-34 (a) provides: "An appeal may be taken by the applicant or any person or corporation, municipal corporation or interested community group other than the applicant who has been aggrieved by such order from the denial, suspension or revocation of a permit or the issuance of a permit or conditional permit within thirty days after publication of such

the plaintiff appealed to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The relevant facts are as follows. The permit application that gives rise to this appeal proposes a thirty lot residential subdivision, each lot approximately one and one-third acres in size. Two of the thirty proposed lots have lake frontage. Approximately fifteen acres of the site are protected wetlands and watercourses. The application requests permission for two regulated activities, both of which involve activity in a watercourse. The first regulated activity is the construction of a common driveway that intersects a man-made intermittent watercourse channel. The driveway is necessary for access to the site from public roads. The driveway impacts 1300 square feet of the watercourse. The second activity impacts both a man-made and a natural watercourse channel to insert a conveyance mechanism for a storm drainage system. This regulated activity will affect approximately one fifth of an acre of the watercourse. The developer also proposed that approximately thirty-two acres of the site be dedicated to open space and a 150 foot buffer be created between the lake and the development.

The application at issue in the present case was filed on November 17, 1998, after the developer's two prior

issuance, denial, suspension or revocation of any such permit to the superior court for the judicial district of New Britain. If the court finds that the action appealed from is an unreasonable exercise of the police power, it may set aside the order. If the court so finds that the action appealed from constitutes the equivalent of a taking without compensation, and the land so regulated otherwise meets the interests and objectives of sections 22a-28 to 22a-35, inclusive, it may at the election of the commissioner (1) set aside the order or (2) proceed under the provisions of sections 48-12 to 48-14, inclusive, to award damages."

In June, 1999, a minor technical change was made to § 22a-34 (a) regarding the judicial district to which an appeal can be taken. See Public Acts 1999, No. 99-215, § 24. For purposes of clarity, we refer herein to the current revision of the statute.

inland wetlands and watercourses applications for the site failed to garner the commission's approval.[5] After the denial of the second of the earlier applications, the developer scaled back the intensity of the proposed development for the site and reduced the impact to the wetlands and watercourses. The number of lots proposed for the site was reduced from forty-nine to thirty-five.[6] The amount of open space was increased from eleven acres to 32.5 acres. The developer also reduced the extent of roadways and driveways on the site from 4100 linear feet to 2300 linear feet, a reduction of almost one-half. The number of subdivision lots with lake frontage was reduced from five to two. Originally, nineteen lots were proposed to be located on regulated land; no lots in the current application are located on regulated land. All of these changes resulted in a reduction of the number of proposed regulated activities for the site from nine to two.

The commission conducted a public hearing on the application, heard testimony from numerous experts, and received many reports. When the application was discussed after the public hearing, members of the commission closely questioned Mark Provonost, the Wolcott town engineer, and Anthony Panico, the independent expert hired by the commission to review the application, about the impact of the proposed development on the wetlands and watercourses. The commission approved the application on January 27, 1999, after more than one year of considering development

[5] After the denial of the first two applications—one denied without prejudice because of a notice problem and the second denied on the merits—the developer divided the site into four sections and filed four applications, one for each section, which were enumerated by Roman numerals. The commission approved all four applications. The plaintiff has appealed only from the application regarding section IV. We refer herein to this section IV application as the "application."

[6] The application presently before this court contains thirty of the thirty-five lots proposed for the site.

proposals for the site. The approval was subject to several conditions recommended by Panico and Provonost. In its approval resolution, the commission specifically found that it had considered feasible and prudent alternatives to the activities proposed in the application.[7]

I

The plaintiff first claims that the trial court improperly dismissed his appeal despite the commission's failure to consider alternatives to the proposed development of the site that would cause less or no environmental impact to the wetlands and watercourses as required by § 22a-41 (a) (2). The defendants dispute the plaintiff's interpretation of § 22a-41 (a) (2) and, further, counter that the plaintiff's interpretation of the statute would be burdensome and unmanageable. We agree with the defendants.

A

Before analyzing the plaintiff's claim, we must first consider the continued viability of this court's decision in *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 628 A.2d 1286 (1993). The plaintiff claims that *Samperi* should be disregarded as a guide in the interpretation and application of § 22a-41 because the statute was amended in 1996, subsequent to the decision in the case, and the statutory amendments rendered parts of

---

[7] The resolution provided that "[t]he Commission, pursuant to [§] 22a-41 (b) of the [General Statutes] and [paragraph] 9.3 of the [Wolcott inland wetlands and watercourses regulations], is satisfied that feasible and prudent alternatives have been adequately investigated for the purpose of minimizing any potential detrimental effect on the [lake] and associated wetlands, and with proper attention to detailed design of the stormwater drainage system, potential impacts on the wetlands and watercourses of the Town will be within acceptable limits."

the decision obsolete.[8] We conclude that *Samperi* still provides valid guidance in the proper interpretation and application of § 22a-41.

In 1993, when *Samperi* was decided, § 22a-41 required that the commission find that "a feasible and prudent alternative [to the proposed activity in the wetlands and watercourses] does not exist." Id., 580; see General Statutes (Rev. to 1993) § 22a-41 (b). The statute failed, however, to provide definitions for "feasible" or "prudent." See *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 580. This court therefore provided a construction for those terms.[9] Id.

We also provided, however, an interpretation of § 22a-41 that local wetlands and watercourses commissions have relied on to guide their decisions regarding § 22a-41 (a) (2). The plaintiffs in *Samperi* argued that the agency was required to create a record demonstrating its consideration of each and every alternative to a proposed incursion or regulated activity in a wetland. Id., 589. We rejected that argument, stating "the statute does not permit an agency to grant a permit if the agency finds that a feasible and prudent alternative exists with regard to any of the incursions or regulated activities. We disagree, however, that the agency's decision-making process in this regard requires explicit consideration of each proposed alternative . . . ." Id., 589–90. We concluded that § 22a-41 did not require the wetlands agency "to consider and rule on each and every possible alternative presented to it." Id., 590. We then addressed

---

[8] The plaintiff concedes that the amendments to § 22a-41 were, in part, a codification of the definitions of "feasible" and "prudent" as provided in *Samperi*. He further claims, however, that the amendments created new ambiguities concerning other conclusions reached in the case.

[9] This court defined the terms as follows: "[W]e [define] feasible to mean as a matter of sound engineering. . . . We [construe] prudent alternatives as those which are economically reasonable in light of the social benefits derived from the activity." (Citation omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 594–95.

the manner in which the applicant could satisfy its burden of establishing the absence of a feasible and prudent alternative to the activity proposed in the wetlands. Id., 593

"The evidentiary burden imposed on the applicant to demonstrate that its proposal is the only feasible and prudent alternative will ordinarily require an affirmative presentation to that effect. If only one alternative is presented, the inland wetlands agency can approve the application for a permit only if no other feasible and prudent alternatives exist. In practical terms, this will usually require that the applicant present evidence of more than one alternative to the local agency." Id.

In 1996, the legislature amended § 22a-41, adding a requirement that a wetlands and watercourses commission should consider six factors when considering a permit application. See Public Acts 1996, No. 96-157, § 2. Among the factors to be considered are "any feasible and prudent alternatives to . . . the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses . . . ." General Statutes § 22a-41 (a) (2). Absent from the statutory amendment and the legislative history is any criticism or intention to alter this court's conclusions in *Samperi* concerning how commissions and applicants should address the feasible and prudent alternatives requirement.

The legislature is presumed to know of our interpretation of statutes and must make its intention known if it intends to overrule our conclusion as to the proper analysis of an issue. See *Gil* v. *Courthouse One*, 239 Conn. 676, 686, 687 A.2d 146 (1997); *Murach* v. *Planning & Zoning Commission*, 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985). The legislature did not express any intention to alter our interpretation of § 22a-41 in *Samperi*. In fact, the legislative history of the amend-

ment to § 22a-41 in 1996 reveals that the legislature intended to amend the statute to be consistent with *Samperi* in some respects.[10] We therefore, reject the plaintiff's contention that *Samperi* is no longer a useful guide to interpretation of § 22a-41.

B

We now turn to the merits of the plaintiff's claim that the trial court improperly found that the commission did consider feasible and prudent alternatives to the proposed wetlands activity as required by § 22a-41 (a) (2). The trial court's findings as to what the commission considered are findings of fact that will be reversed only if they are clearly erroneous. See *State* v. *Lipscomb*, 258 Conn. 68, 74, 779 A.2d 88 (2001). We conclude that the trial court's factual findings were not clearly erroneous.

The trial court began its analysis of this issue by noting that the commission specifically found that feasible and prudent alternatives had been investigated. See footnote 7 of this opinion. The trial court then reviewed the record of the proceedings before the commission. The record revealed that the commission had considered the two prior applications for the site, both of which proposed more numerous and more intrusive activities in the wetlands and watercourses on the site than those proposed in the application. The trial court

---

[10] Representative Jessie Stratton, when addressing the bill that became Public Act 96-157 during a floor debate in the House of Representatives, stated that, "[s]ome of this codifies what has been found by the courts to be the case, for instance in the definition of feasible improvement when we're talking about alternatives." 39 H.R. Proc., Pt. 14, 1996 Sess., p. 4722. Additionally, Christopher J. Smith, a representative of the task force that drafted the bill, stated in his testimony to the environment committee: "[I]n the definitional provisions, the Bill defines feasible . . . and prudent . . . . These definitions closely parallel not only Appellate and Supreme Court decisions addressing these terms in the [Inland Wetlands and Watercourses] Act, but the practical realities of how the terms are employed by most agencies." Conn. Joint Standing Committee Hearings, Environment, Pt. 3, 1996 Sess., p. 631.

further found that the record revealed that the developer and the commission and its staff together reviewed various additional alternatives with regard to development of the site.

In *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 592–93, we established that it is sufficient for a commission to consider as many alternatives as necessary until the balance between economic development and wetlands and watercourses protection has been achieved. "[F]or a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity. . . . An alternative will be deemed to be a feasible and prudent alternative only if it meets both criteria." (Citation omitted.) Id., 595. The developer also is not required to submit plans or drawings for all alternatives proposed. *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 726, 563 A.2d 1339 (1989).

We agree with the trial court and the reasoning of several other Superior Court decisions that have concluded that the review of multiple wetlands applications for a site can constitute the consideration by the agency of feasible and prudent alternatives. See *DeAngelis* v. *Inland Wetlands & Watercourses Commission*, Superior Court, judicial district of Waterbury, Docket No. CV96132755 (May 16, 1997); *Pielmier* v. *Inland Wetlands Commission*, Superior Court, judicial district of Waterbury, Docket No. CV950128564 (March 19, 1997). As a result of reviewing successive applications for the same site, the commission can judge firsthand the feasibility and prudence of alternate development schemes.[11]

---

[11] The plaintiff also suggests that the alternatives to the site plan that the developer and town engineer discussed during off-the-record meetings should not be considered by the trial court in its review of the record. We

Our review of the record shows that it amply supports the trial court's findings that the commission did consider feasible and prudent alternatives to the wetlands activity proposed in the application. In support of his claim that the trial court's findings were clearly erroneous, the plaintiff relies on a single statement by one of the developer's experts, Terrence Myers, an engineer, who stated at the public hearing on the application, that "this [application] has the least amount of impact of any proposal that we did." The plaintiff mistakenly views this as a concession that other possible alternatives with lesser wetlands impact were not considered. The commission is required to consider other alternatives only if they are both feasible and prudent. By definition, "prudent" involves a consideration of economic reasonableness. General Statutes § 22a-38 (18); *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 594–95. The plaintiff has not directed us to any part of the record that shows that the commission failed to consider any *feasible and prudent* alternative that would cause less or no environmental impact to wetlands or watercourses. The plaintiff therefore has failed to establish that the trial court's findings in this regard were clearly erroneous.

II

The plaintiff next claims that the trial court improperly determined that there was substantial evidence in the record to support the commission's finding that there were no feasible and prudent alternatives to the proposed wetlands and watercourses activity. We disagree.

previously have established in *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 213 Conn. 604, 611, 569 A.2d 1094 (1990), that a wetlands commission is not required to state all of its determinations on the record concerning alternatives to the proposal as long as the record contains sufficient evidence to support its conclusions.

We begin by setting forth the standard of review that will govern our analysis of this issue. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . .

"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 587–88; accord *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 540–42, 525 A.2d 940 (1987).

The following additional facts are necessary for the resolution of this issue. For its assistance in reviewing the developer's applications, the commission hired Pan-

ico, an independent expert. In reaching its decision, the trial court concluded that the commission relied primarily on Panico, who reported to the commission that there were no feasible and prudent alternatives to the final plan put forth by the developer. In his report Panico stated: "The Commission's determination to not approve the original application has resulted in the further examination of other feasible and prudent alternatives having acceptable impacts. Ultimately, this resulted in the subject Application and revised proposal, reflecting a dramatic lessening in potential environmental impacts, a significant reduction in the potential number of homes and reduced road construction. Based on sound engineering analysis, *there are no other feasible and prudent alternative plans that allow access to the useable, non-wetlands portion of the site to achieve the application's objectives.*" (Emphasis added.) Panico's report to the commission also detailed the significant changes the developer had made from the original plan, and asserted that these changes would result in a minimal impact on the wetlands and watercourses on the site.

In addition to Panico, many of the developer's experts also testified that the final plan was the most feasible and prudent alternative. Four experts testified for the developer during the site application proceedings. David H. Lord, a soil scientist and environmental consultant with Soil Resource Consultants, testified that the developer had designed the site plan to avoid the wetlands and watercourses located on the site, causing as minimal an impact to the wetlands and watercourses as feasibly possible. Priscilla W. Baillie, an ecologist and botanist with Marine and Freshwater Research Service, opined that the "improvements in the site plan are very significant, and potential impacts on the lake have been substantially mitigated." Keith Shortsleeve, a geologist with SMC Environmental, testified concerning water

sample tests he conducted at the site to monitor various contaminants, averring that "there were no significant impacts between the up-gradient and down-gradient surface waters at the site." Lastly, throughout the application process, Terrence Myers, the developer's professional engineer, detailed the various alternatives proposed for the site to the commission and avowed that the final plan application was more environmentally prudent than any other alternative the developer had proposed previously to the commission. The developer also presented reports from Penelope C. Sharp, a certified wetland consultant, who performed a field investigation of the site. Her report maintained that most of the recommendations she had suggested to reduce the impact on the wetlands and watercourses during the first application process had been implemented in the final application process and that the proposal for the site contained in the final application would not "result in major changes to the wetland functions . . . ."

The plaintiff offered the testimony of two experts during the meetings: George Logan, a professional wetlands scientist and certified wildlife biologist for REMA Ecological Services, LLC; and Kenneth Wagner, an aquatic scientist for ENSR International. The plaintiff and his experts did not offer any proposed alternatives to the developer's plans, but expressed serious concern that: (1) the application to the commission was not filed concurrently with the Wolcott planning and zoning commission as is required by the Wolcott inland wetlands regulations; (2) the proposed development of the site would risk wildlife preservation; (3) no alternatives that had less impact on the wetlands and watercourses had been proposed; and (4) the development would negatively affect the water quality on the site.

In the present case, there is substantial evidence in the record to support the commission's finding that

there were no feasible and prudent alternatives to the activity proposed in the application. No fewer than six experts testified that the activity proposed in the application would have minimal impact on the wetlands and watercourses. Among the six was Panico, the commission's independent expert, who advised the commission that there were no feasible and prudent alternatives to the application. The record clearly illustrates that the commission had a substantial basis in fact for its determination. We conclude that the trial court properly determined that there was substantial evidence in the record to support the commission's findings that there were no feasible and prudent alternatives to the proposed wetlands and watercourses activity for the site.

The plaintiff asserts that the trial court improperly concluded that there was substantial evidence to support the commission's decision because the commission relied only on its expert and the developer's experts. The credibility of witnesses, however, is entirely within the province of the commission. *Samperi* v. *Inland Wetlands Agency*, supra, 226 Conn. 588. The commission's hiring of an independent expert to assist in the review of the wetlands applications for the site was a reasonable and sound step that demonstrates that the commission proceeded to review the applications for the site in a conscientious manner. It was in no way improper for the commission to rely on the opinion it received from the independent expert that it had retained.

The judgment is affirmed.

In this opinion the other justices concurred.