# UNITED JEWISH CENTER *v.* TOWN OF BROOKFIELD ET AL.
## (AC 22493)

Lavery, C. J., and Foti and West, Js.

Argued February 25—officially released July 15, 2003

*Peter S. Olson*, with whom, on the brief, was *Edward P. McCreery III*, for the appellant (defendant inland wetlands commission).

*Patricia C. Sullivan*, with whom, on the brief, was *David L. Grogins*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant inland wetlands commission of the town of Brookfield (commission) appeals from the judgment of the trial court sustaining the appeal of the plaintiff, United Jewish Center.[1] The plaintiff had sought to obtain the commission's approval for a permit to conduct regulated activities in and around wetlands on its property. The commission argues that the court improperly (1) determined that the commission's decision was not supported by substantial evidence and (2) directed the commission to issue the requested permit. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the commission's appeal. The plaintiff owned a 5.029 acre parcel of land in Brookfield. The regulated activity[2] proposed by the plaintiff consisted of crossing the wetland with a driveway to a residence that would be constructed. The plaintiff's proposal included a culvert to allow water to flow through the wetlands. That activity would have disturbed 0.11 acres of wetlands.

The plaintiff filed its application on February 2, 2000. The commission held hearings on April 10, April 24, May 8, May 22, June 12, June 26, July 10 and July 24,

---

[1] The named defendant, the town of Brookfield, is not a party to this appeal. We therefore refer in this opinion to the commission as the defendant.

[2] General Statutes § 22a-38 (13) provides in relevant part that " '[r]egulated activity' means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses . . . ."

2000. Members of the commission conducted a site review of the plaintiff's property. At the July 24, 2000 meeting, the commission denied the plaintiff's application.

The commission unanimously voted to deny the plaintiff's application for the following reasons: "Per section 220-11 (B) (1)[3] of the [Brookfield inland wetlands commission] regulations: The construction of a driveway and installation of a sewer line both crossing 160' of wetlands will create a significant disturbance in the wetlands area. Although the [plaintiff] proposes to install a number of culverts, the length of the disturbance in the wetlands is significant that such culverts will not be sufficient to mitigate the adverse impact on wetlands. Per section 220-11 (B) (4)[4] of the [inland wetlands] regulations: The wetlands area will be irreversibly destroyed by the deposition and filling of material to construct the driveway access. Per section 220-11 (B) (5)[5] of the [inland wetlands] regulations the pro-

[3] Section 220-11 (B) of the Brookfield inland wetlands regulations provides in relevant part: "The [commission] shall consider all relevant facts and circumstances in making its decision on any application for a permit, including but not limited to the following . . . 1) The environment impact of the proposed action, including the effects on the inland wetland's and watercourse's capacity to support fish and wildlife, to prevent flooding, to supply and protect surface and groundwaters, to control sediment, to facilitate drainage, to control pollution, to support recreational activities, and to promote public health and safety."

[4] Section 220-11 (B) 4) of the town of Brookfield regulations provides in relevant part that "[t]his requires recognition that the inland wetlands and watercourses of the State of Connecticut are an indispensable irreplaceable and fragile natural resource, and that these areas may be irreversibly destroyed by deposition, filling and removal of materials by the diversion, diminution or obstruction of water flow including low flows, and by the erecting of structures and other uses."

[5] Section 220-11 (B) 5) of the town of Brookfield regulations provides: "The character and degree of injury to, or inference with, safety, health, of the reasonable use of property, including abutting or downstream property, which would be caused or threatened by the proposed activity, or the creation of conditions which may do so. This includes recognition of potential damage from erosion, turbidity, or siltation, loss of fish wildlife and their habitat, loss of unique habitat having demonstrable natural, scientific

posed activity will result in a significant activity as described in 220-3A (29) of the [inland wetlands] regulations. Per section 220-11 (B) (6)[6] of the [inland wetlands] regulations: The proposed driveway and house may not be suitable due to the configuration of the site and existence of significant wetlands on the site. While the [plaintiff] was instructed to seek other alternative accessway to the building site, there was no written evidence on record that this was prudently pursued." The plaintiff appealed from the commission's decision.

The court sustained the plaintiff's appeal. It determined that for the commission's decision to be upheld, there must be "specific facts in the record that the proposed regulated activities present an unreasonable, significant risk to the wetlands, but no such support for any reason asserted can be found." The court also noted that the record contained evidence from two expert witnesses for the plaintiff. Michael J. Mazzucco, a professional engineer, wrote a letter that stated that measures to mitigate impact on wetlands were considered, and that the only alternative to entering the site other than the proposal would have doubled the impact.

Henry T. Moeller, a soil scientist, conducted a site inspection. He stated, in his report, that there was an adequate area for the house and yard. Furthermore, the development of the driveway would not have any significant or measurable impact on the wetlands.

The court found that there was no expert evidence on the record to contradict or to dispute the plaintiff's

or educational value, loss of diminution of beneficial aquatic organisms and wetland plants, the dangers of flooding and pollution and the destruction of the economic, aesthetic, recreational and other public and private uses and values of wetlands and watercourses to the community."

[6] Section 220-11 (B) 6) of the Brookfield inland wetlands regulations provides in relevant part: "This requires a balancing of the need for the economic growth of the state and the use of its land, with the need to protect [its] environment and ecology for the people of the state and the benefit of generations yet unborn."

experts. The court noted that if the commission had relied on the knowledge of its members, it was obligated to reveal publicly such knowledge and experience so as to provide the plaintiff with an opportunity for rebuttal. The commission's decision was based on prior decisions on driveway applications, specifically, the length of the driveway. The court concluded that the plaintiff was entitled to have its application reviewed on the basis of the property in question and that there was no substantial evidence on the record to support the commission's reasons for the denial. Furthermore, the court rejected the commission's claim that the plaintiff had failed to satisfy a reasonably attainable condition, namely, the purchase of abutting property or to obtain an easement to provide an alternate access. Accordingly, the court sustained the plaintiff's appeal and remanded the application to the commission with direction to issue the permit to conduct the regulated activity, subject to appropriate and reasonable conditions. This appeal followed. Additional facts will be set forth as necessary.

I

The commission first claims that the court improperly determined that the commission's decision was not supported by substantial evidence. Specifically, the commission argues that it was not required to rely on the evidence presented by the plaintiff's experts, that the court improperly usurped the role of fact finder, and that the plaintiff failed to establish that there were no feasible and prudent alternatives to the proposed development. We are not persuaded.

At the outset, a brief review of the Inland Wetlands and Watercourses Act (act), General Statutes §§ 22a-36 through 22a-45,[7] will facilitate our discussion. "In

[7] Most notably, General Statutes § 22a-41 provides in relevant part: "(a) In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration

evaluating the plaintiffs' claims, we are mindful that the [act] rests upon a specific legislative finding that [t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed, and that [t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest

all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed regulated activity on wetlands or watercourses;

"(2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;

"(3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;

"(4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and

"(6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses.

"(b) (1) In the case of an application which received a public hearing pursuant to (A) subsection (k) of section 22a-39, or (B) a finding by the inland wetlands agency that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record in writing. . . ."

and is essential to the health, welfare and safety of the citizens of the state. General Statutes § 22a-36. Accordingly, the broad legislative objectives underlying the [act] are in part to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . [and by] protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment [and for the benefit and enjoyment] of generations yet unborn. General Statutes § 22a-36." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission*, 258 Conn. 178, 193–94, 779 A.2d 134 (2001); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 11.1, pp. 243–45.

With the foregoing in mind, we now turn to the issue raised by the commission's appeal. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . .

"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to

support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *Tarullo* v. *Inland Wetlands & Watercourses Commission*, 263 Conn. 572, 584, 821 A.2d 734 (2003).

## A

The commission first argues that it was not required to rely on the evidence presented by the plaintiff's experts. Specifically, it claims that although it did not offer an expert to contradict or to dispute the plaintiff's experts, the commission was not required to accept the evidence of the plaintiff's experts. Furthermore, the commission claims that it possessed sufficient knowledge, obtained through a site review, to contradict the plaintiff's experts.

Our resolution of the issue is guided by *Feinson* v. *Conservation Commission*, 180 Conn. 421, 429 A.2d 910 (1980). In that case, the plaintiff property owner appealed from the denial of his application to conduct regulated activity in an inland wetland. Id., 422. The plaintiff's expert produced a report and testified before the defendant commission. Id., 423. A member of the commission, who was not an engineer, articulated concerns of a possible public health hazard, and the com-

mission relied heavily on that statement in denying the application. Id., 426–27. The trial court sustained the appeal and ordered the application to be approved. Id., 422. Our Supreme Court, reviewing the record, held that the trial court properly sustained the appeal on the merits.[8]

The issue before the Supreme Court was "whether, on a subject as technically sophisticated and complex as pollution control, commissioners who have not been shown to possess expertise in this area may rely on their own knowledge, without more, in deciding to deny a license to conduct a regulated activity." Id., 427. It is well established that lay members of a commission may rely on personal knowledge concerning matters readily within their knowledge, such as street safety, traffic congestion or local property values. Id. If, however, the commission relies on its special knowledge outside the scope of that of an ordinary trier of fact, it must afford the plaintiff a fair opportunity to respond. Id., 428–29. "The sparsity of reliable evidence in this record is underscored by the fact that the commission, in relying on its own knowledge and experience, acted in a manner which placed its data base beyond the plaintiff's scrutiny. Nowhere in the public hearing, or at any other time and place, was the plaintiff afforded a fair opportunity to hear the commission's fears and to attempt to allay them. . . . *If an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings.*" (Emphasis

---

[8] Our Supreme Court also held that the trial court improperly ordered the commission to approve the application. *Feinson* v. *Conservation Commission,* supra, 180 Conn. 429–30. The proper action was to remand the matter for further consideration. Id.; see also part II.

added.) Id.; see also *Bradley* v. *Inland Wetlands Agency,* 28 Conn. App. 48, 53, 609 A.2d 1043 (1992); *Palmisano* v. *Conservation Commission,* 27 Conn. App. 543, 547–48, 608 A.2d 100 (1992); *Milardo* v. *Inland Wetlands Commission,* 27 Conn. App. 214, 222–23, 605 A.2d 869 (1992); *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 341, 544 A.2d 258 (1988); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 409–10.

Our Supreme Court also has stated that "[d]ue process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act . . . and to offer rebuttal evidence. . . . The purpose . . . is to allow parties to prepare intelligently for the hearing." (Citations omitted; internal quotation marks omitted.) *Grimes* v. *Conservation Committee,* 243 Conn. 266, 274, 703 A.2d 101 (1997); see also *Huck* v. *Inland & Watercourses Agency,* 203 Conn. 525, 536, 525 A.2d 940 (1987).

In the present case, the court, in reviewing the record, found that there was no evidence to support the denial of the plaintiff's application. Furthermore, it found that the reasons set forth by the commission were conclusory statements that generally mirrored the language of the applicable regulations. We agree with the court, and our review of the record similarly failed to reveal any evidence to support the denial of the plaintiff's application. At the various hearings, the primary concern of the members seemed to focus on the length of the plaintiff's proposal and the fact that they previously had denied applications of a shorter length.

At the April 10, 2000 hearing, Alfred J. Garzi, a member of the commission, after hearing that the crossing would be about 160 feet, replied: "That's a tough one. We've denied them on less than this." He later stated that "[w]e've had three or four like this, same scenario,

where we denied them all. . . . Still, 162 feet across the wetlands is going to be tough for us." Garzi concluded by stating that it would be difficult to approve the application, "[e]specially with what we've been doing in the last six months. We've turned down fifty feet."

At the July 10, 2000 hearing, commission vice chairman Jerome Murphy voiced his objections to the proposal due to its length. "My only way of thinking is that the sewer pipe doesn't bother me. What bothers me is the length. One hundred and sixty feet. The sewer pipe and utilities don't bother me, but that's a heck of a long way . . . ." At the July 24, 2000 meeting, Murphy stated that "[i]t's just too big a crossing" and that "[i]t's just too much of a stretch. One hundred and sixty feet of wetlands, it would be grossly inconsistent . . . ." Other members agreed with the concerns about the length and voted to deny the application.

"Agency members can act based upon their own personal knowledge on the history of the property involved in the application . . . . However, for the agency to disregard evidence from experts there must be some evidence in the record which undermines either the experts' credibility or their final conclusions. . . . When the agency chooses to rely upon special knowledge or expertise of some its members, it must bring the matter up at an appropriate stage of the proceedings, generally at or prior to the public hearing, so that anyone adversely affected by that information has an opportunity to question and rebut it." 9 R. Fuller, supra, § 21.5, p. 455. Furthermore, "[a]gency members cannot rely upon facts learned from a first hand investigation without giving the parties before them an opportunity to rebut the evidence." Id., (Sup. 2002) § 21.5, p. 46.

The facts and circumstances of the present case indicate that the question of whether the plaintiff's proposal would have an adverse impact on the wetlands is a

technically sophisticated and complex question. Such a question is outside the knowledge and experience of the lay commission. Furthermore, if the denial was based on the personal knowledge of the commission, such knowledge was never set forth, and the plaintiff was never given an opportunity to rebut such knowledge. Although the length of the proposed driveway was longer than others that previously had been denied, the commission failed to cite any evidence that the length of *that particular driveway* would significantly disturb or have an adverse impact on *that wetland*. Moreover, there was nothing in the record that demonstrated that the members of the commission had any special knowledge of the impact on the wetlands by the plaintiff's proposal. Thus, the plaintiff never had an opportunity to rebut or to challenge any special knowledge.

We conclude, therefore, that the commission acted without substantial evidence by relying on its own knowledge and experience concerning the sophisticated and complex issue of whether the plaintiff's proposal would aversely impact the wetlands when it disregarded expert testimony to the contrary and failed to afford a timely opportunity for rebuttal of its point of view. See *Feinson* v. *Conservation Commission*, supra, 180 Conn. 429. Accordingly, the court properly sustained the plaintiff's appeal.

B

The commission next argues that court improperly usurped the role of fact finder. Specifically, the commission claims that the court ignored the fact that its members conducted a site review, that the plaintiff conceded, by it own plans, that the wetlands would be irreversibly destroyed and that the plaintiff had failed to pursue seriously an opportunity to obtain alternate access to the property.

In part I A, we concluded that the court properly determined that there was no substantial evidence in the record to support the denial of the plaintiff's proposal. Thus, the court did not usurp the role of fact finder, but properly concluded, on the basis of the lack of evidence, that the commission had acted arbitrarily, illegally and in abuse of its discretion when it denied the plaintiff's application.

## C

The commission next claims that the plaintiff failed to establish that there were no feasible and prudent alternatives to the proposed development. Specifically, the commission argues that the plaintiff's expert failed to provide an adequate analysis for his opinion that there was no feasible and prudent alternate accessway, and the commission claims that the plaintiff failed to provide written evidence that it prudently pursued an alternative accessway.

Mazzucco issued a letter that the only alternative to the plaintiff's proposal would more than double the impact on the wetlands. Clearly, an accessway that would more than double the impact to the wetlands is not a prudent alternative.[9] The commission did not provide any contrary expert testimony. Furthermore, it failed to provide the plaintiff with an opportunity to rebut the special knowledge, if any, of any of its members as to why Mazzucco's letter was insufficient to establish the absence of alternatives that were feasible and prudent. We conclude, under the facts and circumstances, that the court properly concluded that the plaintiff had established that there were no other feasible and prudent alternatives.

[9] General Statutes § 22a-38 (18) provides that " 'prudent' means economically and otherwise reasonable in light of the social benefits to be derived from the proposed regulated activity provided cost may be considered in deciding what is prudent and further provided a mere showing of expense will not necessarily mean an alternative is imprudent."

The commission next claims that the plaintiff failed to provide written evidence that it attempted to purchase property or to obtain an easement to provide an alterative accessway. The plaintiff, at the request of the commission, did attempt to obtain an easement for a driveway. At a subsequent hearing, the plaintiff reported that it had attempted to obtain an easement from two neighboring property owners, but was unsuccessful. David L. Grogins, an attorney representing the plaintiff, stated: "I guess we didn't meet with success on that approach, but we did try." He later stated that "[the plaintiff] tried all alternatives . . . ." A member of the commission replied: "We appreciate that." Additionally, the plaintiff hired Edward M. Pawlak, a certified professional wetland scientist, to produce a mitigation report that detailed suggestions on how to further minimize the effect on the wetlands.[10]

It is clear from the record that the plaintiff attempted to find alternative accessways, but was unsuccessful in obtaining one. Moreover, at no point did the commission state that the plaintiff was required to produce written documentation of its efforts. The commission has not provided us with any statute, regulation or case law requiring the plaintiff to provide such written documentation. Thus, absent such a duty, the commission cannot enforce such a requirement without giving fair warning to the plaintiff. Further, we agree with the court that the plaintiff was entitled to have its application reviewed on the subject property and conditions that existed at the time of the application, not conditioned on the ability to acquire the property of others. We conclude, therefore, that the court properly determined that there were no feasible and prudent alternatives.

[10] Pawlak's report suggested that various shrubs and herbaceous plants be planted, and that certain nonnative shrubs be removed.

## II

Finally, the commission claims that the court improperly directed the commission to issue the requested permit. Specifically, the commission argues that the court should have remanded the matter to the commission to take action consistent with the decision. We agree with the commission.

We have stated that "[n]ormally, [w]hen agency action is overturned . . . because of invalid or insufficient findings, we have held that a court must ordinarily remand the matter under consideration to the agency for further consideration. . . . A direct order to the commission is therefore legally unwarranted and the case must be remanded to the commission for further consideration of any conditions that should be attached to the issuance of the permit as supported by evidence in the present record." (Citation omitted; internal quotation marks omitted.) *Strong* v. *Conservation Commission*, 28 Conn. App. 435, 443, 611 A.2d 427 (1992), cert. dismissed, 226 Conn. 227, 627 A.2d 431 (1993); see also General Statutes § 4-183 (k); *Feinson* v. *Conservation Commission*, supra, 180 Conn. 429–30. An exception to that rule, however, exists when "it appears as a matter of law that there is only one single conclusion that the [agency] could reasonably reach, the trial court can direct the agency to take the action on remand." (Internal quotation marks omitted.) *Newtown* v. *Kenney*, 234 Conn. 312, 321 n.4, 661 A.2d 589 (1995), quoting *Feinson* v. *Conservation Commission*, supra, 430.

The court sustained the plaintiff's appeal and remanded the matter "to the commission with the directive to issue the permit to conduct the regulated activity subject to appropriate and reasonable conditions as might pertain thereto." The remand was improper. We cannot conclude, as a matter of law, that there is only

one result that the commission could reach. Instead, consistent with *Feinson,* the case should have been remanded for further proceedings in accordance with this opinion. See also *Strong* v. *Conservation Commission,* supra, 28 Conn. App. 442–44.

The judgment is reversed only as to the order directing the commission to issue the permit and the case is remanded with direction to remand the case to the commission for further proceedings consistent with this opinion.

In this opinion the other judges concurred.