DENNIS LORING ET AL. *v.* PLANNING AND ZONING
COMMISSION OF THE TOWN OF NORTH HAVEN
(SC 17886)
(SC 17887)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued November 27, 2007—officially released July 15, 2008

*Jennifer N. Coppola*, with whom was *Jeffrey M. Donofrio*, for the appellant (defendant).

*Daniel A. Silver*, for the appellee (named plaintiff).

*Opinion*

KATZ, J. The defendant, the planning and zoning commission of the town of North Haven (commission), appeals from the judgment of the trial court sustaining the appeal of the named plaintiff, Dennis Loring,[1] from the commission's decision denying the plaintiff's site plan application seeking to locate an adult, sexually oriented book and video store in a shopping plaza in

---

[1] Velma Dell'Oro, the owner of the shopping plaza in which the book and video store was to be located, was a coapplicant before the commission and was a plaintiff in the appeals that followed the commission's decision denying the site plan application. Dell'Oro subsequently withdrew her appeal. We therefore refer in this opinion to Dennis Loring as the plaintiff.

North Haven (town). The commission's principal claim is that the trial court improperly substituted its judgment for that of the commission in determining that the plaintiff's proposed accessory use of fifteen video preview booths is customarily incidental to his proposed primary use of an adult book and video store, and hence a valid accessory use. The commission further contends that the trial court improperly ordered it to approve the application rather than remand the case back to the commission for further proceedings. We affirm the trial court's judgment.

The record reveals the following undisputed facts and procedural history. Dell'Oro Plaza is a shopping plaza located on Washington Avenue in a commercially zoned district in the town. Prior to May, 2005, approximately 1576 square feet of the plaza had been leased for use as a barber shop and a karate studio. In May, 2005, the plaintiff submitted an application to the commission seeking permission to change the use of that part of the plaza to: "Retail—Adult Book and Video Store with Video Preview Booths." The plaintiff cited § 6.1.11 of the North Haven zoning regulations as authority for the proposed use; that regulation lists "[b]asic neighborhood stores" as a permitted use in commercial zones.[2] There was significant opposition to the application from town residents.

On July 11, 2005, the plaintiff first appeared before the commission on the application through his attorney,

---

[2] Section 6.1 of the North Haven zoning regulations addresses "Uses Permitted in Commercial and Industrial Districts." Section 6.1.11 of the North Haven zoning regulations lists as a permitted use in all such districts: "Basic neighborhood stores: book and stationary, cigar, drug, dry goods and notions, florist, food, including retail bakery, haberdashery, hardware . . . ." The barber shop that had been located at the site in question was a use expressly enumerated under the permitted use category of "[b]asic neighborhood services . . . ." North Haven Zoning Regs., § 6.1.13. It is not clear from the record which section of the regulations authorized the karate studio as a permitted use.

Daniel Silver, and his professional engineer, Gordon Bilides. Because the plaintiff had submitted a revised site plan in response to initial comments from the town's land use administrator, Alan Fredricksen, that neither the commission nor the town's land use staff had been able to review prior to the meeting, the plaintiff agreed to waive the requisite time limitation for acting on an application and to postpone further discussions until August 1, 2005. Before adjourning, however, there was a brief discussion on the video preview booths. Specifically, commission chairman Dominic Palumbo asked how many people would be able to use a booth at one time and how many booths would be on site. Silver responded that only one person per booth could view at a time and that, although the number of booths had not yet been determined, this information would be made known to the commission at or before the next meeting. Commission member James Giulietti then noted to Palumbo that, "in terms of preparation, [Giulietti] would like the [plaintiff] to be aware that [the commission is] looking into whether or not viewing booths are a permitted use," a statement with which Palumbo concurred.

On July 18, 2005, Fredricksen received a letter from Silver providing further information about the video preview booths. Silver indicated therein that the plaintiff "is seeking to provide fifteen . . . video preview booths which [constitute] an accessory use and [are] customarily incidental to the permitted uses of a retail book and video store under [the town's] existing [z]oning [r]egulations." Silver further indicated various steps that the plaintiff would undertake to ensure that only one person would be able to view a video in a booth at a time. Although Silver indicated his willingness to address any problems or concerns with the application and accompanying site plan, he did not hear from the town's land use officials prior to the August 1, 2005 commission meeting.

At the August 1 meeting, Silver began his statements to the commission by noting that the revised site plan application had dealt with all but two issues that had been raised by the town's land use staff in its previous review of the application: the adequacy of landscaping around the dumpster and lighting. After Bilides addressed those issues, the commission raised questions regarding the irrigation system and the lighting plan. Silver assured the commission that, if the application was approved, the plaintiff would work with the town's staff to address the commission's concerns.

After addressing those issues, Silver turned to the issue that had been raised the previous month regarding the video preview booths. Silver asserted at the outset that the booths were a valid accessory use to the permitted use under the town's regulations. He then provided the following information in response to questions by commission members. The fifteen video booths each would be four feet square, with a door that locked. Only one person would be permitted to enter a booth at a time, and no loitering would be permitted outside the booths if all fifteen were occupied. The booths were coin operated with the cost of viewing one quarter per minute. Beyond eliciting information about the booths, various commission members expressed concerns as to whether the booths were a customary part of the video business when facilities like Blockbuster video stores have no preview booths and as to whether a customer could watch more than one minute of a video. Silver responded to these concerns by explaining that, although there was no mechanism to preclude a patron from paying to view for an unlimited period of time, the booths were not provided for that purpose. Rather, the sale of the videos "depends on the ability to have these preview booths" because, unlike mainstream media products for which there are preview facilities or reviews, "adult sexually oriented materials" had no

such outlets. Silver further asserted, citing his extensive experience representing clients similar to the plaintiff, that these booths were customary in adult book and video stores. Two commission members, Palumbo and Giulietti, responded with statements indicating that they accepted Silver's statement that the booths were customary in adult book and video stores.[3] After a brief discussion off the record, the commission unanimously voted to deny the site plan application. The two stated reasons were: (1) "[v]ideo preview booths are not a permitted use"; and (2) "[t]here is no suitable/adequate parking for a use including fifteen . . . video preview booths."

Pursuant to General Statutes § 8-8, the plaintiff appealed from the commission's decision to the Superior Court, contesting both grounds as arbitrary, illegal and an abuse of discretion. The plaintiff further contended that the commission's decision as to the adequacy of the parking violated fundamental fairness, because the commission never had indicated that there was any issue with the number of parking spaces and therefore had provided the plaintiff with no opportunity to respond to such a concern. The trial court sustained the plaintiff's appeal.

With respect to the first reason for the denial, the court noted that both sides had framed the issue "as to whether the fifteen preview booths could be considered an accessory use." More specifically, the court noted: "The commission did not say [in its decision] that an adult bookstore as such was not a permitted use; it said only [that] video booths were not a permitted use. In light of the regulation's provision for accessory uses to the primary use [North Haven Zoning Regs.,

---

[3] The commission contends that these were offhand remarks on which the plaintiff cannot rely, but does not contend that the remarks meant something other than what their plain words imported.

§ 6.1.71][4] the issue here must be whether the video booths were an accessory to the primary use which is an adult bookstore. This is how the [commission's] brief addresses the problem, arguing as it does that video booths in the context of this case and record cannot be considered an accessory use."

The court cited this court's seminal case on accessory uses, *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 511–13, 264 A.2d 552 (1969), for the following guiding principles: "[An] accessory use [is] a use which is customary in the case of a permitted use and incidental to it. . . . An accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use. . . . The word incidental as employed in a definition of accessory use incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . But incidental, when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of incidental would be to permit any use which is not primary, no matter how unrelated it is to the primary use. . . .

"Although [the word customarily] is used in this and many other ordinances as a modifier of incidental, it should be applied as a separate and distinct test. Courts have often held that use of the word customarily places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use of the land. . . . In examining the use in question, it is not enough to determine that

---

[4] Section 6.1.71 of the North Haven zoning regulations, which also falls under the general category "Uses Permitted in Commercial and Industrial Districts," provides: "Accessory uses customarily incidental to a permitted use on the same premises."

it is incidental in the two meanings of that word as discussed [previously]. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. . . . In situations where there is no . . . specific provision in the ordinance, the question is the extent to which the principal use as a matter of custom, carries with it an incidental use so that as a matter of law, in the absence of a complete prohibition of the claimed incidental use in the ordinance, it will be deemed that the legislative intent was to include it." (Citations omitted; internal quotation marks omitted.)

To apply these principles to the present case, the trial court examined the record and determined that the only evidence as to the specific issue of whether video booths were an accessory use to an adult book and video store was Silver's extensive remarks on that subject. The court noted, but rejected, the two reasons cited by the commission as to why it had declined to credit those remarks: (1) Silver's remarks were unsworn; and (2) the commission "undeniably questioned [Silver's representations] based on its personal knowledge of other businesses in town that offer adult videos for sale and rental." The court rejected the first reason as a matter of law, and the second as a matter of fact. The court examined Silver's remarks and concluded that, if his remarks were accepted, "it [would be] difficult to reach any other conclusion" than that the video booths are an accessory use to the permitted use, an adult book and video store. The court went on to note that, under other circumstances, the number of video booths could raise an issue as to whether that use rose to a level that was not "incidental" to the primary use. It concluded, however, that the commission's decision clearly did not rest on this ground as it issued a flat denial that video preview booths are not

a permitted use, the record revealed no evidence that the number of booths had been raised as an issue, and the commission previously had not construed its accessory use regulation; see footnote 4 of this opinion; to support this limiting principle.

With respect to the second ground for the commission's denial of the site plan application, inadequate parking, the court concluded that the record did not support the commission's decision on this ground. Although the court recognized that parking was a legitimate matter for the commission to consider, it noted that the plaintiff's site plan provided for more parking spaces than the number required under the town's zoning regulations. It also noted the absence of any indication in the record that the commission had raised any concern related to this issue, either in correspondence between the plaintiff and town land use officials or at the hearings before the commission. Moreover, because the commission had not raised that issue, the court noted that the plaintiff was deprived of an opportunity to respond to any such concerns, in violation of principles of fundamental fairness. Accordingly, the court concluded that there was nothing in the record to support the commission's conclusion that the parking was inadequate. It therefore sustained the plaintiff's appeal.

Pursuant to General Statutes § 8-9, the commission then filed a petition for certification to appeal to the Appellate Court, which that court granted. Thereafter, pursuant to the plaintiff's motion and over the commission's objection, the trial court modified the judgment to direct the commission to approve the plaintiff's application. The commission then filed a separate petition for certification to appeal from the modified judgment, which the Appellate Court also granted. We transferred the appeals to this court; see General Statutes § 51-199 (c) and Practice Book § 65-1; and thereafter granted the commission's motion to consolidate the appeals.

On appeal, the commission challenges both the substance of the trial court's decision concluding that the commission had acted arbitrarily in denying the plaintiff's site plan application and the relief ordered by the court. Before turning to the specific claims at issue, we note that review of a zoning agency's decision is governed by certain well established standards. "It is axiomatic that the review of site plan applications is an administrative function of a planning and zoning commission. *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 12, 544 A.2d 152 (1988). When a commission is functioning in such an administrative capacity, a reviewing court's standard of review of the commission's action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion . . . ." (Internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 440, 908 A.2d 1049 (2006).

"In reviewing a decision of a zoning board, a reviewing court is bound by the substantial evidence rule, according to which, [c]onclusions reached by [the board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [board]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [board] supports the decision reached. . . . If a trial court finds that there is substantial evidence to support a zoning board's findings, it cannot substitute its judgment for that of the board. . . . If there is conflicting evidence in support of the zoning commission's stated rationale, the reviewing court . . . cannot substitute its judgment as to the weight of the evidence for that of the commission. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks

omitted.) *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 559–60, 916 A.2d 5, on remand, 102 Conn. App. 863, 927 A.2d 958 (2007).

I

We begin with the commission's challenges to the trial court's determination that the commission had acted arbitrarily in concluding that the video preview booths were not a valid accessory use to the primary, permitted use of an adult book and video store because that ground for the denial was not supported by substantial evidence. The commission agrees that the trial court's summary of the pertinent case law on accessory use was thorough and accurate. In particular, the commission agrees that the "customarily incidental" standard under *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 511–13, is the guiding law to determine whether an accessory use is valid. The commission contends, however, that the trial court improperly applied this standard by substituting its judgment for that of the commission in that it: (1) concluded that the commission was required to credit Silver's statements that the video preview booths are customary in the adult video business; (2) failed to take into account the commission's personal knowledge on that issue; and (3) failed to take into account facts from which the commission reasonably could have concluded that the video preview booths were not subordinate to the primary use or minor in significance, and therefore were not incidental to the primary use. We disagree with each of these contentions.

A

Turning first to Silver's statements, we note the following additional facts. At the August 1, 2005 hearing on the plaintiff's application, Silver noted that the plaintiff's proposed adult book and video store "was the first store of its kind within the community," a fact that the

commission never has contested. Because of this fact, Silver explained in detail the nature and purpose of the video preview booths. He stated that he had represented persons involved in the adult entertainment business before zoning authorities in Connecticut and other states for thirty-five years. He specifically represented to the commission, on the basis of that experience, that video preview booths are a customary component of that business. He further explained why these booths are customary, in that they are necessary to promote the sale of adult videos, the permitted primary use under the application. Silver also stated that he would be willing to provide testimony to this effect under oath. The commission did not respond to the offer to testify under oath. Two commission members, however, did make statements indicating that they had accepted Silver's representation that video preview booths are a customary part of the adult video business, and no commission member stated a view to the contrary.[5]

An unsworn statement of a party's counsel is competent evidence before a zoning body. See *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 293, 99 A.2d 149 (1953); *Paige* v. *Town Plan & Zoning Commission*,

---

[5] The minutes of the August 1, 2005 hearing on the plaintiff's site plan application recorded the following dialogue between commission members and Silver: "Giulietti [indicated that the] . . . problem here is without a doubt the preview video booths. He doesn't understand how those are an accessory. If you could turn it into a [B]lockbuster or video store, is that what they are saying. . . . [Silver] replied it is a customary use [f]or adult stores which clearly market this type of product. [Giulietti] explained that an adult store is clearly not listed in this use . . . [and he] *stated so it is customary in that industry* but not customary if you are trying to fall within the purview of other news and video distributors, it's not customary. . . . [Silver] submits to the [c]ommission that it is right for us to look at what is customary in the market for which we are marketing our product. . . . [Silver] stated . . . [that] they are coming forth with testimony and can testify under oath if necessary that . . . within [the adult video] industry [the provision of video booths] is a normal part and incidental and customary use for this type of establishment. [*Palumbo*] *doesn't doubt for that type of establishment that it is.*" (Emphasis added.)

35 Conn. App. 646, 661, 646 A.2d 277 (1994), rev'd on other grounds, 235 Conn. 448, 668 A.2d 340 (1995). Although the commission was free to give Silver's testimony the weight and credence it merited; *Parsons* v. *Board of Zoning Appeals*, supra, 293; it was not entitled to reject it arbitrarily. See *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 440 (court considers whether commission acted illegally, arbitrarily or in abuse of its discretion); cf. *Friedman* v. *Planning & Zoning Commission*, 222 Conn. 262, 268, 608 A.2d 1178 (1992) (commission expressly declined to credit plaintiffs' witness on traffic issue because witness was not traffic engineer). As this court aptly explained in the analogous context of a trial: "A trial court cannot conclude the opposite of testimony it rejects where there is no evidence to justify that opposite conclusion. Nor can it arbitrarily disregard, disbelieve or reject an expert's testimony in the first instance. . . . Where the trial court rejects the testimony of a plaintiff's expert, there must be some basis in the record to support the conclusion that the evidence of the [expert witness] is unworthy of belief." (Citations omitted; internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 294, 545 A.2d 530 (1988). The only statements made by commission members on the record indicated their agreement with Silver's representations on this matter. To the extent that the commission suggests that it declined to credit Silver's testimony because it was not sworn testimony, its failure to accept Silver's offer to testify under oath belies any such contention.

B

The commission claims, however, that it "undeniably questioned [Silver's representations] based on its personal knowledge of other businesses in the area that offer adult videos for sale and rental." The commission has not pointed us to any specific statements or ques-

tions from commission members regarding such businesses, and our independent review of the record has revealed none.[6] Although we are mindful that commission members may rely on personal knowledge, their views must be based on facts known to them rather than on speculation. See *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 767, 941 A.2d 917 (2008) ("[t]o be capable of meaningful review on appeal, [the commission's] determinations must be based on actual knowledge and factual evidence, not solely on personal beliefs or aesthetic preferences"); *Feinson* v. *Conservation Commission*, 180 Conn. 421, 427–28, 429 A.2d 910 (1980) ("We have in the past permitted lay members of commissions to rely on their personal knowledge concerning matters readily within their competence, such as traffic congestion and street safety . . . and local property values. . . . We [also] have . . . recognized as well that expert testimony may be required when the question involved goes beyond the ordinary knowledge and experience of the trier of fact." [Citations omitted; internal quotation marks omitted.]). Moreover, if the commission members intended to disregard Silver's expert testimony because of some special knowledge they had regarding what is customary for adult book and video stores, they should have stated

---

[6] To the extent that the commission suggests that its members could have relied on their knowledge of video stores that principally offer nonadult oriented videos for sale and rental, but also offer some adult videos, we reject that suggestion for two reasons. First, the record reflects no indication of the commission's consideration of such stores. The only reference to other video stores in the record is a statement by one commission member that Blockbuster video stores do not have preview booths, and the commission does not contend that Blockbuster video stores sell adult sexually oriented videos. Second, a store that principally engages in the rental of nonadult oriented materials and incidentally engages in the sale of a small number of adult videos would not be an apt comparison to the primary use in the present case; see *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 513 (custom determined by reference to similarly situated properties); because preview booths for adult videos in such a store would be an accessory use to the accessory use itself.

the basis of their opinion on the record to allow the plaintiff an opportunity to rebut that evidence. See *United Jewish Center* v. *Brookfield*, 78 Conn. App. 49, 59, 827 A.2d 11 (2003) ("Agency members can act based upon their own personal knowledge on the history of the property involved in the application . . . . However, for the agency to disregard evidence from experts there must be some evidence in the record which undermines either the experts' credibility or their final conclusions. . . . When the agency chooses to rely upon special knowledge or expertise of some its members, it must bring the matter up at an appropriate stage of the proceedings, generally at or prior to the public hearing, so that anyone adversely affected by that information has an opportunity to question and rebut it." [Internal quotation marks omitted.]). Because it was undisputed that there were no other adult book and video stores then or previously operating in town and there is no evidence in the record to suggest that commission members had any personal knowledge of such businesses outside of the town, we reasonably cannot conclude that the commission members based their conclusions on personal knowledge.

As this court noted with regard to the issue of custom in *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 513, "[a]s for the actual incidence of similar uses on other properties . . . the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties." We are aware of at least one case in which a court has recognized that coin operated video booths generally are viewed as "customarily incidental to the so-called 'adult' book store"; *In re Appeal of French Adult Books, Inc.*, 44 Pa. Commw. 489, 491–92, 404 A.2d 740 (1979);[7] and

---

[7] The court in *In re Appeal of French Adult Books, Inc.*, supra, 44 Pa. Commw. 492, concluded, however, that the record in that particular case was "entirely devoid of testimony which would support a conclusion that, in this instance, [coin operated video booths] actually are an accessory use." It therefore affirmed the trial court's judgment affirming the zoning authority's denial of the plaintiff's application for a special exception. Id.

several other cases addressing other zoning issues or issues outside the zoning context that have arisen in the context of adult book and video stores that further suggest that video preview booths are a common component of such stores. See, e.g., *Los Angeles* v. *Alameda Books, Inc.*, 535 U.S. 425, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002); *Bolivar Road News, Inc.* v. *Director of Revenue*, 13 S.W.3d 297 (Mo. 2000); *Rosenblatt* v. *Houston*, 31 S.W.3d 399 (Tex. App. 2000), cert. denied, 532 U.S. 1067, 121 S. Ct. 2218, 150 L. Ed. 2d 211 (2001); *Houston* v. *Mitchell*, 737 S.W.2d 370 (Tex. App. 1987); *Davis* v. *State*, 658 S.W.2d 572 (Tex. Crim. App. 1983); *World Wide Video, Inc.* v. *Tukwila*, 117 Wash. 2d 382, 816 P.2d 18 (1991), cert. denied, 503 U.S. 986, 112 S. Ct. 1672, 118 L. Ed. 2d 391 (1992).

## C

Finally, the commission contends that, "[a]lthough the [plaintiff] will maintain that the only purpose of the video preview booths is for customers to preview tapes on sale within the store, the [commission] reasonably *could have* concluded that the use of the video preview booths will not be subordinate or minor in significance." (Emphasis added.) See *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 512 (Incidental component of accessory use standard "incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . [It] also incorporate[s] the concept of reasonable relationship with the primary use.").[8] Specifically, the commission points to the facts that there are fifteen booths in a 1576 square foot space, that the booths will be fully enclosed with doors that lock and that customers could use the booths to watch

---

[8] The commission does not question that the video preview booths bear a reasonable relationship to the primary permitted use of an adult book and video store.

an entire videotape or several videotapes. We reject the commission's post hoc justification.

The commission has failed to explain why these facts render the use not to be incidental to the primary use, and it cites no case law from which we can glean its rationale. There is nothing in and of the facts themselves to suggest that the video preview booths are not incidental to the primary use. The video preview booths would cover only approximately 15 percent of the square footage in the store. Moreover, it is unclear how the physical features of the booths, such as locking doors, bear on their incidental nature. With regard to the number of booths in conjunction with their use, it is unclear whether the commission is suggesting that the revenues generated are more than incidental. The commission did not seek information, however, and therefore none was provided, as to possible revenues expected to be generated by the video preview booths. Therefore, any determination that the booths were not subordinate to the primary use based on revenues, either based on their intended use for previewing videos or abuse of that intended use for extended viewing, would have been based on pure speculation. Notably, the commission does not claim that it *did* base its conclusion on the ground that the booths are not incidental to the primary use, only that it *could have.* We agree that the commission could have raised this issue at or before the August 1, 2005 hearing, but it did not do so, and its unequivocal statement that "[v]ideo preview booths are not a permitted use" evidences that the incidental nature of the booths was not the basis on which the commission rejected the plaintiff's application.

The commission underscores, however, case law in which this court has affirmed that, "[w]hether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be determined by it with a liberal discretion." (Internal quota-

tion marks omitted.) *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 451. What the commission seems to ignore is the admonition that follows this statement: "In determining whether a zoning commission's actions were reasonable, we examine whether there was substantial evidence in the record to support the commission's determination. . . . The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . In light of the existence of a statutory right of appeal from the decisions of local zoning authorities . . . a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . ." (Citations omitted; internal quotation marks omitted.) Id., 452–53. At issue in all of these matters is not whether the commission properly could have considered any one of the aforementioned issues. Rather, it is that there was some onus on the commission not to act arbitrarily, and the principal way in which courts decide whether an agency's decision is arbitrary is to determine whether there is substantial evidence in the record to support that decision. See *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587–88, 628 A.2d 1286 (1993); *DiPietro* v. *Zoning Board of Appeals*, 93 Conn. App. 314, 325, 889 A.2d 269, cert. denied, 277 Conn. 925, 895 A.2d 796 (2006). Indeed, if the commission had special knowledge regarding adult oriented stores that it had acted upon but that was not reflected in the record, it readily could have made the basis of that knowledge known to the trial court.

In the present case, the commission merely stated that the "[v]ideo preview booths are not a permitted use." This conclusory statement cannot serve as the reason for the commission's denial of the plaintiff's application. Therefore, in the absence of actual knowledge or factual evidence to contradict Silver's testimony, the trial court properly concluded that the record did not contain substantial evidence to support the commission's conclusion that the video preview booths are not a valid accessory use to the primary permitted use of an adult book and video store.

## D

The dissent concludes, however, that, "[t]he [operative] ordinance does not . . . refer specifically to adult oriented stores, which necessarily means that the viability of the plaintiff's proposed accessory use depends on how it fits within the local understanding of the proposed principal use under the regulations, namely, a '[b]asic neighborhood store' . . . ." We disagree with the dissent's conclusion for two reasons. First, the dissent would have us decide this appeal on a different basis than the one that the commission presented to the trial court and this court. The record before the trial court and the briefs to this court make it abundantly clear that the commission has framed the issue on appeal as whether video preview booths are customarily incidental to *adult book and video stores*, not as the dissent has framed the issue as to whether such booths are customarily incidental to the broader category under § 6.1.11 of "[b]asic neighborhood stores . . . ."[9] In so doing, the dissent ignores well settled

[9] As we previously have noted, the trial court framed the issue raised by the commission as "whether the video booths were an accessory to the primary use which is an adult book store." In its brief to this court, the commission similarly frames its statement of the first issue as follows: "The trial court erred in substituting its judgment for that of the [commission] in determining that the proposed accessory use of fifteen . . . video preview booths is 'customarily incidental' to the proposed primary use of an adult bookstore and video store under the [town's] [z]oning [r]egulations." In

rules limiting appellate review to issues actually raised and briefed. See *State* v. *Dalzell*, 282 Conn. 709, 715, 924 A.2d 809 (2007); *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686, aff'd after remand, 105 Conn. App. 49, 935 A.2d 1037 (2007). Although questions by a few commission members during the hearing on the plaintiff's application indicate that some commission members may have been viewing the issue as whether the video preview booths were customary in video stores generally, the commission's posture, as a collective body, before the trial court and this court is controlling. See *Konigsberg* v. *Board of Aldermen*, 283 Conn. 553, 597 n.24, 930 A.2d 1 (2007) ("[a]s we have observed repeatedly, [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge" [internal quotation marks omitted]); *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 418, 898 A.2d 157 (2006) (declining to review claim because defendants, zoning commission and its individual members, did not raise it adequately before trial court).

Second, we disagree with the fundamental underpinning of the dissent's analysis, namely, that we look to the broadest category of permitted uses under which the principal use falls rather than the *actual* permitted principal use to determine whether a use is customary

support of that contention, the commission argues: "First, the proposed accessory use is not subordinate or minor in significance. . . . On the issue of custom, the sole evidence presented to the [commission] regarding the issue of custom was the unsworn statement of . . . Attorney Silver. . . . [T]he trial court erred in substituting its judgment for that of the [commission] in determining the weight and credence to be given to counsel's statements. The trial court . . . did not cite to any case law that establishes the proposed accessory use of video preview booths as '*customarily incidental*' *to the claimed primary use of an adult bookstore and video store* or any case law which identifies any accessory use whatsoever which is 'commonly, habitually, and by long practice established' as associated with *the aforesaid primary use*." (Emphasis added.)

to that use. An accessory use is determined specifically by reference to the primary use of the property to which it is incidental. See *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 658–59, 894 A.2d 285 (2006); *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 447–48, 418 A.2d 82 (1979); *Fox* v. *Zoning Board of Appeals*, 146 Conn. 70, 74–75, 147 A.2d 472 (1958). As our seminal case on accessory uses explains, custom is determined by reference to "similarly situated properties," not by reference to the permitted use defined at its highest level of abstraction. See *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 513 ("In applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of *similarly situated properties*." [Emphasis added.]); see, e.g., id., 514 (specifically considering "whether the raising of chickens and goats was accessory use—one which was subordinate and customarily incidental *to property located in the center of town* and used for residential purposes," not whether it was customary to all residential properties [emphasis added]); *Sun Cruz Casinos, LLC* v. *Hollywood*, 844 So. 2d 681, 684 (Fla. App. 2003) (viewing permitted use specific to actual use as "restaurant with frontage" on intracoastal waterway, not restaurants generally, when concluding that trial court properly determined that no customary association existed between gaming boat operations and waterfront restaurants to support valid accessory use); *Simmons* v. *Zoning Board of Appeals*, 60 Mass. App. 5, 9–10, 798 N.E.2d 1025 (2003) (citing *Lawrence* and considering

size of lot and rural character of area, rather than just classification of residential property, to determine whether maintaining two horses and stable is valid accessory use), review denied, 441 Mass. 1103, 803 N.E.2d 333 (2004); *State* v. *P. T. & L. Construction Co.*, 77 N.J. 20, 22, 27–29, 389 A.2d 448 (1978) (viewing permitted use specific to actual use as headquarters for construction company when concluding that helistop pad for landing helicopters was valid accessory use to "similar main uses"). Accordingly, the legitimacy of a proposed accessory use must be considered in light of the *actual* permitted use and not a broad generalization thereof.

Thus, it seems clear that to determine whether the proposed accessory use in this case is a valid accessory use by using a Blockbuster video store as a point of reference applies an inapt basis of comparison. Although both Blockbuster video stores and adult video stores are "[b]asic neighborhood stores"—in fact, they are both video stores—they are significantly different kinds of video stores. They invariably will sell different products, have different clientele and, therefore, have different accessory uses. Indeed, the fact that the commission has framed the issue on appeal by reference to the actual primary use of an adult book and video store, not by reference to the abstract category of basic neighborhood stores, suggests that the commission understands the applicable guiding principles.[10]

---

[10] We also disagree with the dissent's characterization of Silver's remarks as "conclusory." Silver did not merely assert that the video preview booths were customary in adult book and video stores; he offered a rational explanation of why this was so and provided the experience from which he reasonably would have gleaned this information. In addition, we disagree with the dissent's attempt to find facts regarding potential revenues that the video preview booths might have generated, especially in the absence of any statements by the commission at or subsequent to the hearing to indicate that the revenues played any part in its decision.

## II

We next turn to the commission's second stated reason for denying the plaintiff's application, namely, inadequate parking. The commission contends that: (1) its decision on this ground was supported by the evidence; and (2) the trial court improperly concluded that the commission had violated principles of fundamental fairness by failing to raise the issue in such a way as to give the plaintiff notice and an opportunity to respond to this concern. The commission also contends that, to the extent that the plaintiff was not given an opportunity to respond, the proper remedy was a remand to the commission for a hearing. We agree with the trial court's conclusion that there was not substantial evidence to support the commission's denial of the application on the basis of inadequate parking. Therefore, we do not address the fundamental fairness ground of the trial court's opinion. We address the propriety of the court's relief in part III of this opinion.

In its brief to this court, the commission asserts that the town's parking regulation would have required 7.9 spaces for the plaintiff's store, based on its square footage,[11] and the plaintiff's improved site plan map "reflects [that] there will be only a surplus of three . . . parking spaces . . . . Yet, the site plan application seeks to utilize fifteen . . . video preview booths at the subject property. Based on the aforementioned, it is only logical that the [commission] would find that the parking layout shown on the site plan was inadequate to support the

---

[11] Section 7.6 of the North Haven zoning regulations, regarding off street parking, provides in relevant part: "Unless otherwise specifically approved by the [commission] parking facilities shall contain space for vehicles in accordance with the following table. . . .

| "Type of Use | Number of Car Spaces |
|---|---|
| * * * | |
| "Retail stores, personal services shops, pet grooming establishments  . . . ." | [One] space for each 200 sq. ft. of gross floor area |

proposed use of fifteen . . . video preview booths." The record also indicates that there were fifty-seven parking spaces reflected in the site plan for the shopping plaza, which also exceeded the number required by the regulation. By the commission's own admission, therefore, the plaintiff's site plan not only conformed to the parking regulation, it exceeded the requirements. "When reviewing a site plan application, a planning commission similarly acts in an administrative capacity and may not reject an application that complies with the relevant regulations. See *Kosinski* v. *Lawlor*, 177 Conn. 420, 427, 418 A.2d 66 (1979) ('[o]nce the defendants had determined that the site plan complied with the applicable regulations, the issuance of a certificate of approval became a mere ministerial act')." *Pansy Road, LLC* v. *Town Plan & Zoning Commission*, 283 Conn. 369, 375, 926 A.2d 1029 (2007).

The commission appears to contend that the parking was inadequate a priori because there were fifteen video preview booths. We acknowledge the possibility that some unique aspect of a business might require more spaces than those required under the regulation. The commission has failed to explain, and the record does not indicate, however, the factual assumptions that were used to establish the ratio between a site's square footage and the number of parking spaces required under the regulation. For example, such factual assumptions might have been based on the average, maximum or minimum number of customers estimated to: visit a site in relation to its square footage; travel to a site by car rather than by other means; and travel together in a single vehicle. Similarly, the commission had failed to explain why the factual assumptions would not apply in the present case simply because there would be fifteen video preview booths on the site.

Although parking is a proper consideration and subject to some discretion; *Feinson* v. *Conservation Com-*

*mission,* supra, 180 Conn. 427; as the trial court properly noted, "there must be some basis in the record to save a zoning agency's decision on parking or traffic from being characterized as illegal or arbitrary." Finding no such basis, the trial court properly could not conclude that the denial based on the lack of adequate parking reasonably was supported by the record.[12] *Samperi* v. *Inland Wetlands Agency,* supra, 226 Conn. 587–88; *DiPietro* v. *Zoning Board of Appeals,* supra, 93 Conn. App. 325.

## III

Last, we turn to the question of whether the trial court properly ordered the commission to approve the plaintiff's application. The governing law is not disputed. Rather, what is disputed is the application of that governing law to the facts of the present case. We conclude that, in light of the record, the trial court properly ordered the commission to grant the plaintiff's application.

General Statutes § 8-8 (*l*) provides in relevant part: "The court, after a hearing thereon, may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from. If a particular board action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the board decision or orders the particular board action. . . ." In his prayer for relief, the plaintiff sought an order sustaining his appeal and an order directing the commission to approve the application.

---

[12] The trial court noted that, at the August 1, 2005 hearing, one commission member had remarked that "there must be a lot of business coming" and asked whether there would be a waiting room. The court concluded that, even if this ambiguous comment related to a concern about parking, the commission had not raised it in such a way as to allow the plaintiff notice and an opportunity to be heard on the issue. In our view, this comment does not in any way address the defects we have noted in the commission's decision. Moreover, as we previously have noted, we do not reach the fundamental fairness issue.

"When, on a zoning appeal, it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. *Watson* v. *Howard*, 138 Conn. 464, 470, 86 A.2d 67 (1952); *Executive Television Corporation* v. *Zoning Board of Appeals*, 138 Conn. 452, 457, 85 A.2d 904 (1952); *Bishop* v. *Board of Zoning Appeals*, 133 Conn. 614, 623, 53 A.2d 659 (1947). In the absence of such circumstances, however, the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority. *Bogue* v. *Zoning Board of Appeals*, 165 Conn. 749, 753–54, 345 A.2d 9 (1974); *Guerriero* v. *Galasso*, 144 Conn. 600, 608, 136 A.2d 497 (1957); *Watson* v. *Howard*, supra, 469–70." (Internal quotation marks omitted.) *Mobil Oil Corp.* v. *Zoning Commission*, 30 Conn. App. 816, 820, 622 A.2d 1035 (1993).

In light of the reasoning set forth in parts I and II of this opinion, we conclude that there was only one conclusion that could have been drawn as a matter of law in the present case. Therefore, the trial court did not improperly usurp the commission's function by ordering it to approve the plaintiff's application.

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, J., concurred.

NORCOTT, J., with whom ZARELLA, J., joins, dissenting. I disagree with part I of the majority opinion, which concludes that the decision of the defendant, the

planning and zoning commission (commission) of the town of North Haven (town), which determined that fifteen video preview booths are not an accessory use for an adult oriented book and video store located in town, was not supported by substantial evidence. In my view, the commission reasonably could have determined that the booths did not constitute an accessory use, as defined in § 6.1.71 of the North Haven zoning regulations,[1] to the proposed principal use of a "basic neighborhood store" pursuant to § 6.1.11 of the North Haven zoning regulations.[2] Thus, the majority's decision to affirm the judgment of the trial court sustaining the zoning appeal brought by the named plaintiff, Dennis Loring,[3] from the commission's denial of his site plan application, improperly invades the discretion accorded to the commission, whose decision in this case was supported by substantial evidence, and an even more substantial dose of common sense. Accordingly, I respectfully dissent.[4]

I begin by noting my agreement with the majority's statement of the relevant facts and procedural history of this case. I wish, however, to emphasize a few relevant details about the proposed video preview booths and

---

[1] Section 6.1 of the North Haven zoning regulations provides in relevant part: "No use shall be permitted in any Commercial or Industrial District except . . .

"6.1.71 Accessory uses customarily incidental to a permitted use on the same premises . . . ."

[2] Section 6.1.11 of the North Haven zoning regulations permits properties in CB (commercial) zones, in which the plaintiff's store is located, to be used for "[b]asic neighborhood stores: book and stationary, cigar, drug, dry goods and notions, florist, food, including retail bakery, haberdashery, hardware."

[3] See footnote 1 of the majority opinion.

[4] In my view, the commission's determination that the video preview booths did not constitute an accessory use provided a valid, independent basis for denying the plaintiff's site plan application. Accordingly, I express no opinion about the parking and remedy issues discussed in parts II and III of the majority's opinion.

the commission's evaluation of this aspect of the plaintiff's application. According to a July 15, 2005 letter from the plaintiff to Alan Fredricksen, the town's land use administrator, the plaintiff intended to provide fifteen video preview booths as an accessory use to the 1576 square foot retail book and video store. The plaintiff proposed to operate the business under administrative conditions that included posting a sign, at least six by eight inches in size and printed with a dark ink upon a light contrasting background with letters at least one-quarter inch in height, in each booth stating: " 'NOTICE: It is unlawful for this booth to be occupied by more than one person at a time or for any person to operate this device unless the door is closed and locked.' " The plaintiff also proposed to: (1) monitor all common areas in the store either by direct view or by video at least once every sixty seconds; (2) install lights indicating when a particular booth is in use; and (3) enclose all of the booths completely with doors that have a mechanism that will not permit the operation of a showing device unless the door is locked.[5]

At the commission's August 1, 2005 meeting, after they had discussed issues with respect to the lighting and landscaping of the plaza, Daniel Silver, the plaintiff's attorney, explained that he has practiced first amendment litigation for more than thirty-five years. Silver stated that the video preview booths are necessary for marketing purposes because adult films "are different from other types of media" since "[t]here are no preview facilities or reviews that you can pick up in a newspaper. Everything which will appear on a

---

[5] The plaintiff also proposed operating conditions that would apply to the store generally, which included: (1) maintaining a light level of no less than two foot candles at the floor level in every portion of the store; (2) providing at least one bathroom with soap and wash basins; (3) keeping the walls, ceilings, floors and booths in good repair and in "clean and sanitary" condition; (4) providing vermin and pest control measures; and (5) keeping all walkways and aisles free and unobstructed.

preview will be for sale or rental in the store. *The sale of the material depends on the ability to have these preview booths.*" (Emphasis added.) He described the booths as an "industry wide phenomenon which has been created over the years of great importance to the princip[al] use," which is "the sale and rental of videos, DVDs, books, magazines, clothing, related goods such as gifts, cards and other dry goods and notions which are clearly a permitted use under our regulation." Silver stated that the booths are "a natural, usual phenomenon [or] part" of the adult entertainment store, and, if such a store "is a permitted use then it is clearly an accessory use."

In response to questions from Dominic Palumbo, the commission's chairman, and James Giulietti, another member of the commission, Silver stated that the booths would be four by four feet in size, and emphasized that they "will be properly monitored" to assure compliance with the conditions that he had proposed in the July 15 letter. In response to Giulietti's question about which of the regulations authorized the booths, Silver stated that the "basic neighborhood stores" regulation permitted the principal use, namely, the plaintiff's store, and that the booths were accessory to that use because they are "customary" for stores that market adult products. Silver emphasized that the regulations did not distinguish between adult and ordinary bookstores, and likened the booths to video preview monitors present at video stores such as Blockbuster. He submitted that the commission should "look at what is customary in the market for which we are marketing our product."

Giulietti stated his disagreement with Silver's application of the regulations. In Giulietti's view, the plaintiff was attempting to "boot [strap]" his adult video business onto the regular retail regulation, and he stated that he had never seen a preview booth in a local video

store such as Blockbuster. Palumbo stated that the commission intended to focus on what is "basic and normal" in the town in determining accessory uses, but Silver responded that the plaintiff's proposed store would be the first of its kind in the town. Noting that the plaintiff is "not marketing Disney," he stated that the inquiry would, therefore, need to focus on what is present in adult book and video stores in other areas, and he offered to provide testimony under oath to the effect that video preview booths are a "normal part and [an] incidental and customary use for this type of establishment" nationally.

In response to a question from Robert Nolan, another member of the commission, Silver stated that, although the word "preview" means that someone could come to sample a video to determine whether they want to buy it, that same person also could continue to watch the entire movie in the booth by feeding the video player quarters, at the cost of twenty-five cents per minute. Silver emphasized, however, that this was not the purpose of the preview machines, which are intended to "create the sales within the store itself."[6]

Before reaching the commission's claim that the trial court improperly concluded that its determination that the booths did not constitute an "accessory use"[7] was

---

[6] In response to further questions from Vern Carlson, the commission's vice chairman, Silver stated that people would not be permitted to loiter in the store waiting for a booth to become available if all were occupied. He also offered to make enforcement of this rule a condition of approval.

[7] The commission's denial of the plaintiff's application was phrased that "video preview booths are not a *permitted* use." (Emphasis added.) Given that this case consistently has been argued and decided in prior proceedings as an "accessory use" matter, I, like the majority, will treat it accordingly. See, e.g., *Conetta* v. *Zoning Board of Appeals*, 42 Conn. App. 133, 140, 677 A.2d 987 (1996) ("It is clear from the record of both the public hearings and the executive session that it was the board's intent to find a legal nonconforming use. We will not hold lay administrative boards to the standard of legal finesse set by Justices Holmes and Cardozo.").

not supported by substantial evidence, I reemphasize the standard of review, namely, that "the review of site plan applications is an administrative function of a planning and zoning commission. . . . When a commission is functioning in such an administrative capacity, a reviewing court's standard of review of the commission's action is limited to whether it was illegal, arbitrary or in abuse of [its] discretion. . . . In determining whether a zoning commission's action was illegal, arbitrary or in abuse of its discretion, a reviewing court's principal inquiry is whether the commission's action was in violation of the powers granted to it or the duties imposed upon it. . . . In addition, this court has stated that [t]here is a strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission . . . ." (Citations omitted; internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, 280 Conn. 434, 440–41, 908 A.2d 1049 (2006).

Moreover, it is well settled, under the line of this court's decisions beginning with *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 264 A.2d 552 (1969), that "[w]hether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority, to be determined by it with a liberal discretion." (Internal quotation marks omitted.) *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 451. The commission's decision that the video preview booths did not constitute an accessory use is, therefore, "subject to a very narrow, deferential scope of review. If a zoning commission has stated the basis for its actions, a reviewing court must determine only whether the [commission] correctly interpreted the [regulation] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the [commission] is endowed with . . . liberal discretion, and its action is subject to review . . . only

to determine whether it was unreasonable, arbitrary or illegal. . . . Moreover, the [plaintiff] bear[s] the burden of establishing that the [commission] acted improperly. . . . Furthermore, [g]enerally, courts will defer to a local board's interpretation of the ordinance governing accessory uses unless such ordinance or the interpretation of it, has no foundation in reason. . . .

"In determining whether a zoning commission's actions were reasonable, we examine whether there was substantial evidence in the record to support the commission's determination. . . . The substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Citations omitted; internal quotation marks omitted.) Id., 451–52. Finally, in reviewing the commission's administrative decision, we also must be mindful of the fact that the plaintiff, as the applicant, bore the "burden of persuading the commission that it was entitled to the permits that it sought" under the town's accessory use regulation. *Upjohn Co.* v. *Planning & Zoning Commission*, 224 Conn. 82, 89, 616 A.2d 786 (1992).

The relevant zoning regulation permits properties to be used for "[a]ccessory uses *customarily incidental* to a permitted use on the same premises." (Emphasis added.) North Haven Zoning Regs., § 6.1.71. I agree with the majority that, in considering the propriety of the commission's decision, we are guided by the principles from *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 509, explaining the term "customarily incidental," as recently articulated in *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 453–54, which stated

"that [t]he word incidental as employed in a definition of accessory use incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . But incidental, when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. . . .

"We also explained the meaning of the word customarily, stating that [a]lthough it is used in this and many other ordinances as a modifier of incidental, it should be applied as a separate and distinct test. . . . Moreover, in *Lawrence*, we noted that [i]n examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed [previously]. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. . . . As for the actual incidence of similar uses on other properties . . . the use should be more than unique or rare, although it need not necessarily be found on a majority of similarly situated properties to be considered customary. . . . We noted in *Lawrence*, that the determination of whether a use is subordinate and customarily incidental to the principal use of the property is one that is peculiarly within the knowledge of the local board." (Citations omitted; internal quotation marks omitted.)

Moreover, "[i]n applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than

unique or rare, even though it is not necessarily found on a majority of similarly situated properties." *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 513; see id., 515 (board did not act illegally or abuse its discretion in determining that raising chickens and goats for food was not accessory use for residential property located in town center); see also *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 672, 894 A.2d 285 (2006) (zoning enforcement officer's studies of number of dogs licensed per household in town, as well as noise complaints by plaintiff's neighbors, "provide[d] a reasonable basis for [board] to have concluded that keeping more than four dogs is both unique and rare in the town, and therefore, not a permissible accessory use of the town's residential property").[8]

---

[8] By way of background, I note that in *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 648–49, a zoning board appealed from the judgment of the trial court sustaining the plaintiff's appeal from its decision ordering the plaintiff to reduce the number of pet dogs on her property from fourteen to four. Although the town's regulations did not allow expressly the keeping of household pets as a principal use, or name them as an enumerated accessory use, this court concluded that the accessory use portion of the regulation served "as both a mechanism for the town to permit individuals to keep dogs as pets under the town regulations, as well as to regulate what is an acceptable number of pet dogs that can be maintained at a single-family dwelling." Id., 657; see id. (noting "rich tradition in the town, and the state as a whole, of citizens keeping dogs as pets").

This court then considered the board's claim that "the trial court improperly substituted its judgment for that of the board when it rejected the board's determination that the number of pet dogs as an accessory use in the town's rural residential district should not exceed four in number." Id., 668. Applying the principles from *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 509, the court concluded that there was "substantial evidence in the record to support the board's conclusion that in excess of four dogs was not a permissible accessory use to a residential property [and that] the trial court [had] ignored the deferential standard to board determinations that was required, as well as the board's liberal discretion to make such determinations, and its unique understanding of what is customary in the town." *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 670. Specifically, the court emphasized that the board reasonably could have credited studies by the town's zoning enforcement officer into the number of dogs licensed per residence in the town, which revealed that, "of all the properties in the town with more than one dog, only 2 percent of those residences

As the majority notes, the parties have not cited any Connecticut or sister state cases applying these principles in the context of video preview booths located in book and video stores, adult or otherwise, and the only appellate level decision that our collective independent research has located is *In re French Adult Books, Inc.*, 44 Pa. Commw. 489, 490, 404 A.2d 740 (1979), wherein the court considered an adult bookstore's appeal from the zoning board's denial of "a special exception for the erection of coin-operated motion picture projectors in individual booths ('peep shows') within its bookstore, which is located in a commercially-zoned area . . . ." The applicable zoning regulation cited and quoted in that decision permitted " 'retail stores' " in that commercial district. Id., 491. Noting the store's claim that the booths constituted an accessory use, the court stated that, "as a practical matter 'peep shows' have been considered as customarily incidental to the so-called 'adult' bookstore"; id.; but concluded that the trial court and board properly had determined that the record of the particular case was "entirely devoid of testimony which would support a conclusion that, *in this instance*, 'peep shows' are actually an accessory use." (Emphasis added.) Id., 492. In my view, that Pennsylvania decision is less than informative in the present case because it does not explain what kind of information had been presented to the zoning board therein.[9]

maintained in excess of four dogs, and the plaintiff's property, with fourteen pet dogs, was a significant outlier." Id., 671. The board's decision also was supported by "testimony from several neighbors who were upset about the disruptive noise and intimidating behavior exhibited by the plaintiff's animals"; id.; and the plaintiff's failures to "present any evidence contesting [the officer's] findings as to the number of pet dogs typically found in the town's residential areas [or] . . . suggest an alternate methodology . . . to discern the number of pet dogs that are 'customarily incidental' to a residential property in the town." Id., 672.

[9] I also have found a trial level decision, *Whitehall Township* v. *Gomes*, 69 Pa. D. & C.2d 514, 515–16 (1974), which is a de novo appeal to the Pennsylvania Court of Common Pleas from a summary criminal conviction arising from an adult bookstore owner's operation, in a back room of his shop, of ten coin operated video booths displaying brief pornographic films,

Thus, this case turns on the application of well settled principles of law to a record that is, in my view, not particularly well developed[10] and reflective of the informality of proceedings before a zoning commission, which is "not bound by the strict rules of evidence. . . . It may act upon facts which are known to it even

without first obtaining a special permit from the town's zoning board required for a "commercial amusement facility . . . ." Noting that it "d[id] not intend to condone the nefarious business of peddling smut"; id., 517; the court concluded that the defendant had not committed a criminal violation of the town's zoning ordinances because "coin-operated motion picture machines located [in the defendant's store] are an accessory use and do not constitute a separate commercial amusement facility." Id. The court considered the town's argument that "there is no evidence that the showing of pornographic films is 'customarily incidental' to an adult book store" to "[misconceive] the real issue. It is not what is customarily incidental to an adult book store that is controlling, but what is customarily incidental to a retail store. The frequent presence of coin-operated machines of amusement in [the town's] retail establishment is clear beyond peradventure of a doubt." Id., 516.

In my view, *Whitehall Township* is inapposite because it involves a party defending himself in the vastly different procedural context of a criminal case, wherein the prosecuting authority bears the highest burden of proof. Moreover, the trial court in that case was not required to defer to the fact-finding of an administrative agency. Finally, although I agree with the court's focus on what is customary to retail stores generally, as compared to adult oriented stores specifically, the comparison of the booths to other "coin-operated machines of amusement"; id.; which presumably would include games like Pac Man or picture taking booths, is unpersuasive because it does not explain the degree or incidence to which such devices are found in other retail stores—i.e., whether the other retail stores maintain *banks* of such machines.

[10] Although minimally adequate for the commission to render a decision, the record in this case is, in my view, dismayingly thin. The plaintiff failed to flesh out his application at the August 1 hearing by providing relevant details such as the amount of revenue he expected from the preview booths, or specific locations of similar stores in the area around the town that contain video preview booths. As the plaintiff properly points out, however, the commission's members did not endeavor to ask these questions or dispatch its zoning enforcement officer to perform a thorough investigation, either. Thus, the record in this case pales in comparison to the exhaustive investigation and research by the zoning enforcement officer in *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 671. See footnote 8 of this dissenting opinion.

though they are not produced at the hearing. . . . The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice. That is, there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act." (Citations omitted.) *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 292–93, 99 A.2d 149 (1953); accord, e.g., *Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 477–78, 562 A.2d 1093 (1989) (commission has burden of proving harmlessness of improper receipt of ex parte evidence).

In light of this informality, even the unsworn statements of counsel for a party at a zoning board hearing are considered evidence that the board is entitled "to accept . . . in lieu of sworn testimony and to give to it *such credence and weight as, in their minds, it merit[s].*"[11] (Emphasis added.) *Parsons* v. *Board of Zon-*

---

[11] In *Parsons* v. *Board of Zoning Appeals*, supra, 140 Conn. 293, this court overruled "the dictum in *Celentano* v. *Zoning Board of Appeals*, 135 Conn. 16, 18, 60 A.2d 510 [1948], that such statements [of counsel before zoning boards] are not evidence . . . ." I note that the *Parsons* rule represents the minority view on this issue, as most states hold that an attorney's unsworn statements before a zoning commission are not evidence. See, e.g., *Heard* v. *Foxshire Associates, LLC*, 145 Md. App. 695, 706–708, 806 A.2d 348 (2002) (rules of professional conduct do not preclude counsel for party from testifying before administrative boards, but those statements must be under oath to be considered substantial evidence); *Eichenbaum* v. *Arred*, 72 App. Div. 2d 563, 564, 420 N.Y.S.2d 749 (1979) (statements of landowner's attorney are not substantial evidence in support of zoning board's decision to grant variance); *Loveall* v. *Zoning Hearing Board*, 127 Pa. Commw. 53, 57, 560 A.2d 919 (1989) (zoning board improperly granted permit to construct rifle range in reliance on "statements [by] counsel . . . made in the hearing before the board regarding [the] noise tests; such statements are not evidence"), appeal denied, 524 Pa. 634, 574 A.2d 74 (1990); *Pellini* v. *Zoning Board of Review*, 103 R.I. 484, 486, 238 A.2d 744 (1968) (concluding that "several assertions made by applicants' counsel in support of his clients' cause" with respect to land's highest and best use "cannot be considered as competent evidence upon which the board could grant relief"). Indeed, one commentator, noting that "[d]ecisions of the utmost importance,

*ing Appeals,* supra, 140 Conn. 293; see also *Conetta* v. *Zoning Board of Appeals,* 42 Conn. App. 133, 138, 677 A.2d 987 (1996) (board was entitled to rely on statements of attorney with respect to length of time that property had been used for operation of plumbing business); *Paige* v. *Town Planning & Zoning Commission,* 35 Conn. App. 646, 660–61, 646 A.2d 277 (1994) (relevant statements about traffic by applicant's counsel constituted "evidence" that subdivision application did not pose public safety threat), rev'd on other grounds, 235 Conn. 448, 668 A.2d 340 (1995).

It is, however, similarly well settled that zoning board members "are entitled to take into consideration whatever knowledge they acquire by personal observation . . . ." (Internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals,* 228 Conn. 785, 791, 639 A.2d 519 (1994); id. (although "only evidence that the plaintiff presented to the board concerning the unusual or unique nature of the alleged hardship was his statement that the property was the only undeveloped lot in the area [the board was entitled to reject that in light of observation by its chairperson] . . . that there were many other nonconforming lots in the area that were subject to the same zoning restrictions as the plaintiff's property"). Put differently, "[w]e have in the past permitted lay members of commissions to rely on their personal knowledge concerning matters readily within

impacting on liberty, economic, and societal rights" are made in administrative adjudications, including zoning proceedings, has suggested that ethical restrictions on attorney testimony; see, e.g., Rules of Professional Conduct 3.7 (a); should apply at administrative adjudications, as well as court trials. A. Rochvarg, "The Attorney as Advocate and Witness: Does the Prohibition of an Attorney Acting as Advocate and Witness at a Judicial Trial also Apply in Administrative Adjudications?" 26 J. National Assn. Admin. L. Judges 1, 37 (2006); see also id., 38 (suggesting that attorneys not be permitted to testify in support of their clients at administrative adjudications absent showing of " 'some hardship' ").

their competence . . . ."[12] *Feinson* v. *Conservation Commission*, 180 Conn. 421, 427, 429 A.2d 910 (1980).

Thus, the record in this case presents a collision between what are in my view two minimally probative, and barely legally admissible, forms of evidence before zoning boards, namely, the advocacy of counsel and the personal knowledge of board members. In reviewing the commission's treatment of the plaintiff's site plan application, I am, however, mindful that "an accessory use is a use that is customary and incidental to a *permitted primary use* [and] is dependent on or pertains to the primary use"; (emphasis added) *Upjohn Co.* v. *Planning & Zoning Commission*, supra, 224 Conn. 89; and that the plaintiff seeks to avail himself of the town's "[b]asic neighborhood stores" ordinance; North Haven Zoning Regs., § 6.1.11; as permitting his site plan for the town's first adult oriented shop. Section 6.1.11 permits properties in CB zones to be used for "[b]asic neighborhood stores: book and stationary, cigar, drug, dry goods and notions, florist, food, including retail bakery, haberdashery, hardware." The ordinance does not, however, refer specifically to adult oriented stores, which necessarily means that the viability of the plaintiff's proposed accessory use depends on how it fits within the local understanding of the proposed principal use under the regulations, namely, a "[b]*asic neighborhood store*";[13] (emphasis added); par-

[12] I note, however, that, "[i]f an administrative agency chooses to rely on its own judgment, it has a responsibility to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings." *Feinson* v. *Conservation Commission*, 180 Conn. 421, 428–29, 429 A.2d 910 (1980); see also id., 429 ("a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view").

[13] I find significant the regulation's use of the word "basic" to modify "neighborhood store." See North Haven Zoning Regs., § 6.1.11. Accordingly,

ticularly given the permissive nature of the town's zoning regulations, under which "those matters not specifically permitted are prohibited."[14] *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653; see also *Klingaman* v. *Miller*, 168 App. Div. 2d 856, 857, 564 N.Y.S.2d 526 (1990) (determination of whether profession is "home occupation" that "can be carried on in an addition to a detached garage" requires reference "to all relevant provisions in the zoning ordinance, including the definitions of accessory use, accessory building, floor area and private garage, and the list of uses specified by the ordinance as permitted in the particular district"); *Avon* v. *Oliver*, 253 Wis. 2d 647, 660–62, 644 N.W.2d 260 (App.) (determination of whether sport shooting range is accessory use on agricultural property requires reference to enumerated uses permitted under ordinance governing "prime agricultural districts"), review denied, 254 Wis. 2d 263, 648 N.W.2d 478 (2002).[15]

even as I accept the contention that the plaintiff's store is a "neighborhood store"; cf. *In re French Adult Books, Inc.*, supra, 44 Pa. Commw. 491 (applicable zoning regulation permitted "retail stores"); I bear in mind the word "basic," which commonly is defined as "1: of, relating to, or forming the base or essence: FUNDAMENTAL 2: constituting or serving as the basis or starting point . . . ." Merriam Webster's Collegiate Dictionary (10th Ed. 2001). Indeed, the related word "fundamental" is defined in relevant part as "serving as a basis supporting existence or determining essential structure or function: BASIC . . . ." Id. Thus, I would take my cue from the regulation's use of the word "basic," and defer to the commission's understanding of the uses that are accessory to those stores that are essential to the function, or form the essence, of its town.

[14] See North Haven Zoning Regs., § 6.1 (setting forth schedule of uses and stating that "[n]o use shall be permitted in any Commercial or Industrial District except one which is indicated by a check mark in the column below applicable to the district in which such use is located"). Moreover, although § 6.1 of the regulations "does not specify that the uses listed as permitted are principal uses of property, and although the [town's] zoning ordinances do not contain a definition of principal uses, [I] note that the uses listed in [§ 6.1] are uses that fit the traditional definition of principal uses as the main, primary or dominant use of the land." *Clifford* v. *Planning & Zoning Commission*, supra, 280 Conn. 449 n.11.

[15] Although I agree with the majority that custom in the accessory use context is determined by reference to "similarly situated properties"; *Law-*

Put differently, it appears to me that the plaintiff seeks a comparative advantage over other "basic neighborhood" book and video stores in the town that would be based solely on the content of his wares. Requiring the commission to permit the plaintiff to proceed in this manner would "[evoke] a concern for the unfair

*rence* v. *Zoning Board of Appeals*, supra, 158 Conn. 513; I disagree with the majority's criticism of my approach to determining which similarly situated properties constitute the appropriate reference point for determining the validity of the proposed accessory use. I begin by emphasizing that this court's decision in *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 449, 418 A.2d 82 (1979), which the majority cites, is distinguishable, notwithstanding its focus on the applicant as a "non-traditional synagogue [that] had non-traditional needs" in determining whether unrestricted overnight use of its premises constituted an accessory use under the town's zoning regulations that permitted " 'places of worship' . . . ." Id., 441. In *Beit Havurah*, the court relied on the federal and state constitutional protections for freedom of religion in rejecting the board's conclusion that unrestricted overnight use was not an accessory use, because there was no evidence that the overnight accommodations had a nonreligious purpose and "[n]on-traditional as well as traditional synagogues are protected by the provisions of the state and federal constitutions guaranteeing freedom of religion. The legitimacy of non-traditional religious practices cannot depend on what is customary among more traditional religious groups. . . . What are the particular tenets of a recognized religious group is not a matter for secular decision." (Citations omitted.) Id., 449–50.

I similarly disagree with the majority's reliance on *Sun Cruz Casinos, LLC* v. *Hollywood*, 844 So. 2d 681, 684 (Fla. App. 2003), which concluded that the "trial court had competent, substantial evidence to support its finding that the [gambling cruise]-related uses were not customarily associated with the main permitted use, a restaurant with frontage on the intracoastal" waterway because none of the other waterfront restaurants in the area operated large ships from their premises. That case is distinguishable because, although the described permitted use was more specific than "restaurant," the accessory use determination focused on the location of the premises, rather than on the wares sold within. Id., 683. Finally, although *State* v. *P.T. & L. Construction Co.*, 77 N.J. 20, 27, 389 A.2d 448 (1978), emphasized that "the main use to which the premises are put is as the headquarters for a construction company," that case is distinguishable because, in rejecting the board's conclusion that a heliport was not a valid accessory use to a construction company headquarters, the court in that case was able to rely on actual evidence that the town, despite its residential character, already had multiple heliports, and at least eight other construction companies in the state operated heliports at their headquarters. Id., 27–28.

surprise of a neighbor who thought she knew the full range of uses that could be established next door, only to be met with an unexpected use and then [be] told it was merely accessory to the primary use of the land."[16] T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 85.

The type of uses that are accessory to the permitted principal use of "basic neighborhood" stores in the town is not a technical matter and is readily within the personal knowledge of the commission's members, who as community residents presumably have reason to frequent such establishments on a regular basis. Cf. *Lawrence* v. *Zoning Board of Appeals*, supra, 158 Conn. 514 (whether raising chickens and goats for food is "subordinate and customarily incidental to property located in the center of town and used for residential purposes [is] a determination . . . peculiarly within the knowledge of the local board"). Put differently, that the town, and presumably the members of the

---

[16] I disagree with the majority's characterization of my analysis as one that improperly reaches an issue that was not properly raised or briefed before either the trial court or this court. See, e.g., *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007). My analysis does not violate this prescription because I do not raise any *issues* that the trial court or the parties did not have a chance to consider. Indeed, a review of the record in this case demonstrates that my analysis does not ambush the trial court, which was well aware that, in the commission's view, the plaintiff's store would not be treated any differently than the other video stores in town, including those that sell adult videos. In response to the court's questions, the commission discussed at length the use of listening devices in music stores in town, and disagreed with the trial court's suggestion that, in the video realm, "Blockbuster could have little preview booths cause, you know, you want to see—well, let me watch this movie for fifteen minutes and see if I like it and it doesn't have to be an adult." Indeed, in response to further questions from the trial court, the commission stated that the other video stores in town, some which do sell adult videos, play movie clips on overhead screens, rather than in preview booths, and specifically emphasized that "the *Lawrence* test allows [the commission] to consider what other businesses in North Haven that sell adult videos, the adult genre, how their business is set up and the fact that they don't include video preview booths . . . ."

commission, ostensibly lacked experience with adult oriented stores, did not operate to deprive them of their knowledge of what constitutes a "basic neighborhood" store in the town. Thus, the commission's members reasonably could have rejected Silver's statements in favor of their own personal observations, which were communicated to him at the hearing, namely, that existing local basic neighborhood stores such as Blockbuster customarily do not have such booths, but instead play video clips or movie trailers on overhead monitors, without charging prospective customers who are the targets of such advertising.[17]

The plaintiff relies on *Clifford* v. *Planning & Zoning Commission,* supra, 280 Conn. 455, and likens Silver's comments and assertions to those of the city's zoning enforcement officer in *Clifford,* which this court cited as a reasonable basis for the board therein to conclude that the storage of dynamite was an accessory use for a contractor's yard in an industrially zoned area. In *Clifford,* the court stated that it "would be inconsistent with [the] deferential standard of review if we were to require the commission to second-guess the judgment of the very person charged with the enforcement of the city's zoning regulations." Id. The court's statements in *Clifford* explain, however, just why the present case is distinguishable, because it "recognize[d] that, even under this very deferential standard of review, there may be circumstances under which *conclusory statements made by a single individual before a zoning commission may not constitute substantial evidence*

---

[17] The reliance by the majority, the plaintiff and the trial court on the comments of Palumbo that "seem to indicate, he understood the use of video booths were an accessory use in this type of business" is misplaced. The comments of the commission's members, including Palumbo, read in context, indicate their view of the principal use of the plaintiff's property under the applicable ordinance, which permits "basic neighborhood" book or video stores, and is not a rule pertaining specifically to adult oriented businesses.

to support a commission's determination. We emphasize that our conclusion in the present case that [the zoning enforcement officer's] conclusory assertions, alone, constituted substantial evidence to support the commission's determination, is grounded on the fact that . . . *the zoning enforcement officer of the city, was charged with the responsibility and the authority to enforce the zoning provisions of the city.* Therefore, we conclude that the commission properly accorded great weight to his statements." (Emphasis added.) Id., 455 n.12. In contrast, the commission in the present case reasonably could have elected not to rely on conclusory comments by an attorney responsible only for the zealous advocacy of his client's application, rather than the impartial enforcement of the town's zoning ordinances.[18] See *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 444, 586 A.2d 590 (1991) (rejecting claim that board improperly delegated its authority and describing town counsel as "neutral employee of the board rather than a party to the controversy" with respect to "statutory construction of a zoning regulation"); cf. Rules of Professional Conduct 3.7, commentary (Attorney-witness rule exists because "[a] witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a

---

[18] The majority quotes *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 294, 545 A.2d 530 (1988), for the proposition that the commission inappropriately rejected Silver's arguments because, in the "analogous context of a trial," a "trial court cannot conclude the opposite of testimony it rejects where there is no evidence to justify that opposite conclusion. Nor can it arbitrarily disregard, disbelieve or reject an expert's testimony in the first instance. . . . Where the trial court rejects the testimony of a plaintiff's expert, there must be some basis in the record to support the conclusion that the evidence of the [expert witness] is unworthy of belief." (Internal quotation marks omitted.) In my view, this proposition is inapplicable because *Builders Service Corp.* involved a court trial in a declaratory judgment action, which is an adversary, rather than administrative, proceeding.

statement by an advocate-witness should be taken as proof or as an analysis of the proof.").

Put differently, although the commission perhaps *could* have chosen to credit Silver's statement under *Parsons* v. *Board of Zoning Appeals,* supra, 140 Conn. 293, and its progeny, it was not *required* to do so any more than it would be mandated to accept unquestioningly the proposition that a test track would be an accessory use to a proposed new automobile dealership. Cf. *Dottie's Dress Shop, Inc.* v. *Lyons,* 313 Ill. App. 3d 70, 73, 74, 729 N.E.2d 1 (store selling sexual paraphernalia and devices properly classified as "[a]dult [u]se" under ordinances, rather than "retail clothing store" because "[t]wenty pieces of lingerie . . . do not a dress shop make"), appeal denied, 191 Ill. 2d 528, 738 N.E.2d 925 (2000); *Bolivar Road News, Inc.* v. *Director of Revenue,* 13 S.W.3d 297, 302 (Mo. 2000) (rejecting argument of adult book and video store that tokens sold for its thirteen preview booths were not subject to state sales tax applicable to " 'places of amusement' " because booths existed solely for purpose of permitting customers to sample store's merchandise and "were not meant to provide customers with entertainment"). The majority, therefore, invades the commonsense discretion exercised by the commission's members, who reasonably could have rejected the proposition that the booths are used solely for marketing and preview purposes that are incidental to the plaintiff's retail operations, inasmuch as the booths: (1) have the capability of generating significant revenues;[19]

---

[19] According to my arithmetic, at twenty-five cents per minute, the fifteen booths conceivably could generate up to $225 per hour of operation, and $1800 per eight hour business day if used in full. The majority considers any attempt to quantify the projected revenues from the booths to be inappropriately speculative, given the lack of specific information in the record. In my view, however, we do not have to check our common sense at the door and presume that the plaintiff plans to construct fifteen booths with the expectation that most will sit empty for the majority of the time. Thus, even if I were to assume that the booths produce income at only one half of their

(2) inexplicably require the prospective customer to pay for the experience of being advertised to; and (3) if the occupant has sufficient fistfuls of quarters, will play the full movie, rather than the trailers that typically are used to arouse audience interest in feature films. Accordingly, I would conclude that the commission's decision that the plaintiff failed to satisfy his burden of proving that the video preview booths are an accessory use was supported by substantial evidence, and the trial court, therefore, improperly sustained the plaintiff's appeal.

Because I would reverse the judgment of the trial court and remand the case with direction to dismiss the zoning appeal, I respectfully dissent.

capacity, that amounts to $900 per day, which is still a lot of quarters, and, therefore, hardly an "incidental" sum for a small business.